547 F.Supp. 457 (1982)
FEDERAL BARGE LINES, INC., a corporation, and United Barge Company, a corporation, Plaintiffs,
v.
SCNO BARGE LINES, INC., a corporation, and the United States of America, Defendants.
No. 81-1023C(B).
United States District Court, E. D. Missouri, E. D.
August 23, 1982.
*458 Dan Ball, St. Louis, Mo., for plaintiffs.
John Sandberg, Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendants.

MEMORANDUM OPINION
REGAN, District Judge.
For decision is the liability of either or both of defendants for the damage to Barge OT-142 on November 16, 1980, while in the tow of the M/V Fort Pierre on the Ohio River.
In early October, 1980, defendant SCNO Barge Lines, Inc. (SCNO), the owner of the towboat, and plaintiff United Barge Company (United) entered into a written charter agreement whereby United agreed to charter the vessel. Under the terms of the charter, SCNO agreed to man and victual the vessel. On or about November 15, 1980, Barge OT-142, an all steel open hopper river barge owned by plaintiff Federal Barge Lines, Inc. (Federal), was tendered for towing to the M/V Fort Pierre and was accepted into its tow. OT-142 was the stern barge in the port string of the towboat.
The M/V Fort Pierre and its tow, including Barge OT-142 traveled downstream on the Ohio River toward Cairo, Illinois, on November 15-16, 1980. At approximately 4 p. m. on November 16, the towboat and its tow approached Lock and Dam No. 53 on the Ohio River. Lock and Dam No. 53 was at all relevant times operated and maintained by the United States of America through the Army Corps of Engineers (Corps). It has two adjacent lock chambers, one 600 feet long closest to the bank, and the other chamber, outriver, is 1,200 feet long. The 1,200 foot chamber had been completed and opened for operation on November 7, 1980. It has a long guide wall extending several hundred feet upriver from the lock chamber. This guide wall consists of a series of interlocking circular steel cells formed by pile-driven interlocking steel sheet piling filled with sand and covered with a concrete cap with an adjacent rub wall.
In making its approach to the 1,200 foot chamber, the tow of M/V Fort Pierre landed against the upriver end of the lower guide wall. The tow was piloted so that Barge OT-142 contacted the end of the guide wall first with the head of the tow moving in later. As the tow proceeded through the Lock, the deck crew of the M/V Fort Pierre discovered that Barge OT-142 was taking on water in its No. 2 and No. 3 wing tanks through holes in the port side of the barge. No holes or leaks had been discovered upon inspection by the crew before the barge had struck the guide wall.
After the locking procedure had been completed, the M/V Fort Pierre continued its journey to Cairo, Illinois. During this time, constant but unsuccessful efforts were made by the deck crew of the vessel to pump water from the wing tanks of OT-142. At Cairo, its cargo was off-loaded into another barge so that OT-142 could be repaired. The damage sustained by Barge OT-142 proximately result in a total of $12,437.92 expenses.
The foregoing facts are not in dispute. The original complaint by Federal, as sole party plaintiff, was against SCNO, as sole party defendant, premised on the theory of a bailment with SCNO as bailee. Two months later an amended complaint was filed joining United as additional party plaintiff[1] and the United States of America as an additional party defendant. Subsequently, *459 the complaint was again amended by eliminating the bailment theory and adding another count pleading a res ipsa loquitur theory.
We first consider the liability of the United States of America. As against that defendant, plaintiffs' theory is that there was an underwater obstruction on the guide wall, of which they were not warned, with the result that OT-142 was damaged by striking the obstruction. In support of this claim, a marine surveyor testified that on November 18, 1980, by probing with a pike pole along the length of the wall, he ascertained the presence of an obstruction at a depth of ten feet below the surface of the water which extended outward from the wall approximately twelve inches. Plaintiffs' evidence was also to the effect that the type of damage to the barge was consistent with it having struck such an obstruction.
Upon being advised of the possibility that the barge had come into contact with an underwater obstruction in the Lock, employees of the Corps probed the wall with a pike pole and found no obstruction. Another inspection was made after the Corps was informed of the report of plaintiffs' marine surveyor. Again, no obstruction was found. We note, in this connection, that the draft of the barge (which had been loaded level) was only nine feet. There was also testimony to the effect that there were rocks in the Ohio River between Locks 52 and 53.
We are convinced by the great weight of the credible evidence, and so find, that no underwater obstruction existed and that the United States of America, through the Corps of Engineers, was not guilty of any negligence which caused or contributed to cause whatever damage was sustained to Barge OT-142.
We turn next to plaintiffs' claim against SCNO. The initial issue is whether the crew of the M/V Fort Pierre was negligent in navigating the barge. We find that it was.
Instead of bringing the whole tow inside the guide wall, which admittedly was not only a feasible but much the safer procedure, the pilot intentionally brought the tow in at an angle with about a third of the tow outside the wall, with the result that the stern barge (OT-142) struck the guide wall, with the head of the tow coming in later. We note that this occasion was the first time the pilot had gone through the new chamber. By way of excuse, the pilot testified that the outdraft (which pushed OT-142 against the wall) was stronger than he had anticipated, although he conceded that the outdraft can quickly change. There was no reason justifying his failure to follow the safer course. And inasmuch as the damage to the barge would not have occurred absent negligence, we find that the pilot was guilty of navigational negligence.
Whether SCNO is liable for the damages to the barge is dependent upon whether the M/V Fort Pierre was demised to United. "To create a demise the owner of the vessel must completely and exclusively relinquish `possession, command, and navigation' thereof to the demisee." Guzman v. Pichirilo, 369 U.S. 698, 699, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962), citing United States v. Shea, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403 (1894); Leary v. United States, 81 U.S. (14 Wall.) 607, 20 L.Ed. 756 (1872), and Reed v. United States, 78 U.S. (11 Wall.) 591, 20 L.Ed. 220 (1871).
A demise is to be distinguished from a time or voyage charter, in which the owner of the vessel "retains the possession, command, and navigation of the ship." Reed v. United States, supra, 78 U.S. (11 Wall.) at 600. This distinction is of vital importance for the reason, as held in Leary v. United States, supra, 81 U.S. (14 Wall.) at 610, that "(i)f the charter party let the entire vessel to the charterer with a transfer to him of its command and possession and consequent control over its navigation", he is considered as owner pro hac vice for the voyage or service stipulated, so that the charterer, not the owner, is responsible for the negligence of the crew.
The intent of the parties is determinative. Unless the actions of the parties are inconsistent *460 therewith, we look to the language of the charter to ascertain such intent.
Thus, after first stating in the Chartering Clause (Paragraph 1) that SCNO agrees to charter and United "agrees to accept (the vessel) under Demise Charter"[2] at Cairo, Illinois, the Charter Agreement provides in Paragraph 4(b):
"The charterer [United] shall have exclusive control over and possession of the vessel. The Master (although employed by SCNO) shall be under the orders and direction of the Charterer as regards operation, navigation, control and employment of the vessel." And in Paragraph 3, which requires SCNO to carry and maintain certain insurance coverage, the parties sought to avoid any misunderstanding as to the effect thereof by expressly stating that SCNO had agreed to provide the stipulated insurance coverage "as a matter of convenience" and that its agreement to do so "will in no way alter the intent of the Agreement as to possession and control of the vessel."
And finally, Paragraph 4(e) of the Agreement emphasizes the purpose of the parties to create a demise by stating:
"It is the expressed intent of the parties to this Charter Agreement that it be interpreted as a full demise of the vessel. All provisions seemingly contrary to this intent are to be considered as matters of convenience of expedience, or as matters of cost or risk allocation between the parties. The charterer is to remain responsible for the navigation and operation of the vessel and direction of the crew in all other matters except as herein otherwise stipulated."
In arguing that in spite of the foregoing expressions of intent to vest complete control and possession of the vessel in United, a demise was not created, plaintiffs stress the very provisions (requiring SCNO to provide insurance coverage and to man, victual and supply the vessel) which the parties agreed should in no way alter their intent to create a demise. It is well settled that provisions such as those relied on by plaintiffs do not militate against the creation of a demise. United States v. Shea, supra, 152 U.S. at 190, 14 S.Ct. at 522; Guzman v. Pichirilo, supra, 369 U.S., at 701, 82 S.Ct. at 1097. And see The Del Norte, 119 F. 118, 122 (9 Cir. 1902).
Plaintiffs further urge that the presence of the words "Fully Found" in the title of the Agreement[3] "demonstrates that the true intent of the parties is somewhat ambiguous." Plaintiffs' theory is that a charter cannot at one and the same time be a fully found one and a demise. Wholly aside from the significant fact that the words "fully found" are nowhere referred to in the body of the Agreement, or otherwise expressed, we have been cited to no case or other authority supportive of plaintiffs' contention.[4]
As stated in Winn v. C. I. R., 595 F.2d 1060, 1062 (5 Cir. 1979), "in a `fully found' charter, the owner delivers the equipment fully manned, supplied and equipped, and able to perform a particular job for the charterer." This is to be distinguished from the classical "bareboat" charter which, as the name implies, is simply a charter of a bare boat. It is thus apparent that when, as in this case, the vessel is delivered into the possession, command and control of the charterer fully manned, supplied and equipped, it is appropriate to designate such a charter as a "full" or "fully found" demise.
Plaintiffs further argue that without regard to the foregoing, the question of "responsibility for negligent navigation" was resolved in the insurance coverage clause by *461 Paragraph 3(e) of the Charter Agreement, wherein United waived all claims for damages to barges in tow of the vessel up to $7,500, with the provision that as to claims in excess of the waived amount, United "may seek recourse for full amount of damage including the first $7,500." We do not agree that this provision makes SCNO responsible for the damage to Federal's barge.
Although the purpose of this provision is not in terms set forth, there is no language therein which expresses an intent to impose liability upon SCNO for "negligent navigation" of the vessel. Not only do the words "negligent operation" or their equivalent nowhere appear in this provision, but significantly, there is an entire absence of any mention of SCNO. We do not believe this was an oversight in view of the fact that in other provisions of the Charter Agreement in which an obligation or responsibility is intended to be imposed upon SCNO, the parties expressly so stated.
Of importance is the further fact that this provision is contained within the insurance coverage paragraph, so that it is reasonably to be inferred (and we construe the Agreement as so providing) that United "may seek recourse" against the insurance company in the event United has a claim under the collision and towage insurance policy for damage in excess of $7,500 to one of its barges in the tow.[5] However, nothing in this clause purports to confer a right upon Federal (which is not a party to the Agreement) to "seek recourse" against SCNO for damage to a barge owned by Federal, particularly where, as here, United, as the demisee and owner pro hac vice of the motor vessel Fort Pierre, is responsible for its negligent navigation.[6] Query: If the charter agreement is not a demise and the damage to Federal's barge had been less than $7,500, would the waiver by United of damage claims which do not exceed $7,500 preclude Federal from asserting a claim against SCNO for the damage caused by its negligent navigation?
There is no extrinsic evidence of conduct by the parties inconsistent with the expressed intent to create a demise. We have no doubt that neither the pilot nor any other member of the crew were given any specific navigational instructions or orders by United, other than such as would be inherent in its orders as to what barges were to be picked up and where to take them. However, it is equally true that SCNO gave no navigational instructions during the term of the charters. It is obvious that only in a most unusual case would the owner or operator of a vessel (particularly on the river) give any orders as to how to navigate the vessel. The conclusionary testimony of Labdon and of the pilot of the vessel (with no evidentiary support) that SCNO had the right to direct the operations of the vessel is contrary to the specific provisions of the Agreement above adverted to which vest solely in United the right to give navigational instructions to the crew which was in the general employ of SCNO.
We hold that under the Charter Agreement the M/V Fort Pierre manned, victualled and supplied, was let to United "with a transfer to [it] of its command and possession and consequent control over its navigation" for the term of the charter. It follows that United was the owner pro hac vice of the vessel and responsible for any negligence in the operation of the vessel. Having relinquished possession, command *462 and navigation, SCNO is not liable to Federal (or to United) for the damage to Barge OT-142.
This memorandum opinion constitutes our findings of fact and conclusions of law.
NOTES
[1] There is no explanation of record for the joinder of United as a party plaintiff in this action to recover the expenses incurred by Federal as the result of damage to the Federally owned barge. There is no evidence that although United is a subsidiary of Federal, the two companies are separate and distinct corporate entities. No point is made as to joinder, no doubt for the reason that in any event United would have been brought in by SCNO as a third party defendant.
[2] Necessarily presupposing a transfer of possession are the provisions (Paragraph 1(b)) warranting seaworthiness "at time of delivery" and (Paragraph 6) for "redelivery of the vessel upon the expiration of [the term of] this Charter."
[3] "Fully Found Demise Charter Agreement", the first two words appearing on one line and the last three on the line immediately below.
[4] Plaintiffs mistakenly cite Parks, The Law of Tug, Tow and Pilotage, (2d Ed.) 895. Not a word therein refers to Fully Found Charters.
[5] Another possible construction of the provision, which is advanced by SCNO's counsel, is that it might be applicable to a situation in which the damage claim by United is based on a breach by SCNO of its warranty in Paragraph 1(b) that "at the time of delivery", the vessel would be "in all respects seaworthy and properly manned, equipped and supplied."
[6] In his deposition, Robert F. Labdon (who had represented United in negotiating the Charter Agreement) testified for plaintiffs that he understood the clause as meaning "that if SCNO damaged our [barges], in excess of that, a certain agreed amount, probably their deductible, that we had recourse to go back at them and collect if they damages the [barges].

Even this interpretation would not impose liability on SCNO for the negligent navigation of the vessel by United as demisee.