**Stanley GEORGE and Angela George, Plaintiffs,**

v.

**INTERCONTINENTAL TRANSPORTATION, LTD., and Standard Fruit and Steamship Company, Defendants.**

**No. 81 Civ. 4775 (JES).**

United States District Court, S.D. New York.

June 23, 1983.

Andrew C. Risoli, New York City, for plaintiff.

Walker & Corsa, New York City, for defendant Intercontinental Transp. Ltd.; H.M. Walker, Jr., William J. Blumenschein, New York City, of counsel.

McHugh, Leonard & O'Conor, New York City, for defendant Standard Fruit & Steamship Co.; Maurice F. Beshlian, Janet D. Baker, New York City, of counsel.

OPINION & ORDER

SPRIZZO, District Judge.

Stanley George, a longshoreman, commenced this action pursuant to section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 905(b) (1976) (the "Act"), against Intercontinental Transportation Ltd., the owner of the vessel SANTA MARTA (the "Shipowner") and Standard Fruit & Steamship Company, the charterer (the "Charterer"), seeking to recover damages for personal injuries he sustained while unloading the vessel.

On February 23, 1981, plaintiff, an employee of Sealand Terminals, Inc. (the "Stevedore"),[1] was engaged in unloading a cargo of bananas and pineapples from the SANTA MARTA. The cartons of fruit were stowed atop portable aluminum ventilation battens, which battens were raised approximately eight inches above the ship's deck by metal supports,[2] forming a false floor beneath which cool air could circulate in the hold during transit. (Testimony of Cornelius Kiernan, Trial Transcript at 16–20 (hereinafter "Tr. ___"); Testimony of Reginald King, Tr. at 26–29.) As the cartons were unloaded, the battens became exposed.

During the discharge operations a heavy piece of unloading machinery referred to as a booster was lowered into the hatch where plaintiff was working. According to the testimony, the booster fell on its side, whereupon plaintiff and several of his coworkers righted it. (Testimony of Stanley George, Tr. at 15–17.) Shortly thereafter, plaintiff stepped into an open space between two of the exposed ventilation battens and fell, id. at 15–19; Testimony of Wayne Bradley, Tr. at 7–8, sustaining injuries to his left knee.[3]

Plaintiff contends that defendants are jointly and severally liable for his injuries. He premises the Shipowner's liability on both its ownership and control of the vessel and the fact that it selected and owned the flooring upon which the cargo was loaded. (Plaintiff's Proposed Findings of Fact and Conclusions of Law, Plaintiff's Findings of Fact, paras. 3–5, 10, 13) (hereinafter "PFF"). He argues that the Charterer is liable since (1) the contract of affreightment between the Charterer and the Shipowner ("Contract of Affreightment"), of which he is allegedly a third party beneficiary, obligated the Charterer to inspect the vessel to insure that it was well fitted and safe for the longshoremen to work on, id. at 6, 7, 11, 13, 23; (2) the Charterer was the employer of the vessel's crew by virtue of paragraph 4H of the Contract of Affreightment, Plaintiff's Memorandum of Law at 2; and (3) the Charterer is responsible for the absence of necessary unloading equipment, to wit, wooden planking, PFF at para. 17. The defendants have cross-claimed against each other.

■ The Act provides that a longshoreman may recover for injuries "caused by the negligence of a vessel."[4] 33 U.S.C. § 905(b). As a general rule, a vessel is not liable for injuries resulting from known or obvious dangers unless the shipowner should anticipate the harm notwithstanding the obviousness of the danger. *Evans v. Transportacion Maritime Mexicana SS "Campeche,"* 639 F.2d 848, 855 (2d Cir.1981).

■ Congress has placed the primary responsibility for the safety of longshoremen on the stevedore. *Evans,* 639 F.2d at 852; see 33 U.S.C. § 941(a) (1976). In view of the stevedore's expertise in loading and unloading cargo and the fact that it is generally in the best position to prevent acci-

---

1. The Stevedore is not a party to this action.

2. The testimony is inconsistent with regard to how high off the deck the battens were raised. *See, e.g.,* Testimony of Wayne Bradley, Tr. at 7; Testimony of Cornelius Kiernan, Tr. at 19.

3. Plaintiff also contends that the accident was the proximate cause of injuries to his right

knee as well as cardiac problems. In view of the Court's holding, *infra,* it is unnecessary to reach these issues.

4. The Shipowner and the Charterer each assert that the vessel's negligence is chargeable to the other.

278

dents which might arise during discharge operations, the owner of a vessel is ordinarily entitled to rely on the stevedore to correct dangerous conditions which the stevedore has the ability to remedy. *Evans,* 639 F.2d at 852, 856. While the Second Circuit has indicated that a shipowner's reliance on the stevedore is not justified if (1) the dangerous condition is too difficult for the stevedore to remedy alone; (2) the custom in the industry places the burden of acting on the shipowner; or (3) the shipowner joins in the decision to continue cargo operations notwithstanding the hazard, *id.* at 856, this is not such a case. *Compare Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); *Lieggi v. Maritime Co. of the Philippines,* 667 F.2d 324 (2d Cir.1981).[5]

At trial, the Stevedore's own safety director, Reginald King, testified that the Stevedore ordinarily would and should correct dangerous conditions caused by exposed ventilation battens by (1) removing the battens as they become exposed during

discharge operations; or (2) covering them with walking boards; or (3) stopping work until the dangerous condition can be remedied.[6] (Testimony of Reginald King, Tr. at 24–26.) Indeed, Cornelius Kiernan, the Stevedore's assistant safety director, testified that he reported the unsafe conditions to the Stevedore and recommended that the battens be removed as soon as they were clear of cargo.[7] (Testimony of Cornelius Kiernan, Tr. at 18.) It is undisputed that the Stevedore took none of these precautions, at least with respect to the area where plaintiff's injury occurred. Since the Stevedore's own safety practices would have required it to take measures to prevent accidents of the type that befell plaintiff, and since the Court finds that the Shipowner was justified in relying upon the Stevedore to take those measures, the Court concludes that plaintiff has failed to establish that his injuries were caused by the vessel's negligence.[8]

The Court further finds no basis upon which to impose liability on the Char-

---

5. The record is bereft of any evidence establishing that the Shipowner either joined in the decision to continue cargo operations, or as in *Lieggi, supra,* undertook to correct the condition.

6. While employees of the Stevedore testified that, if discharge operations had been stopped, the cargo could have rotted, see Testimony of Reginald King, Tr. at 88, that circumstance cannot be regarded as legally relevant. The Stevedore's duty to direct a work stoppage when unloading conditions are unsafe cannot be compromised or eroded by a concern for the economic consequences that may follow if cargo operations are halted. Any other holding would be flatly inconsistent with the protections afforded to longshoremen by 33 U.S.C. § 941(a).

7. Kiernan testified that, since he was neither a stevedore nor a union member, he could not direct the foreman in charge of discharge operations to order the longshoremen to cease working. Tr. at 13. Rather, he indicated that he would report the unsafe condition to the labor manager or superintendent who in turn would direct the longshoremen. *Id.* at 13–14. Kiernan further testified that he reported the unsafe conditions at issue here to them, *id.* at 14, and is sure that the foremen were directed to remove the battens as soon as the cartons of bananas were removed. *Id.*

8. Nor may it be realistically argued that ventilation battens constitute gear used during cargo operations within the meaning of *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). The ventilation battens, even if they were loose fitting and defective, were portable, and any danger resulting from their defective condition could have been readily remedied by their removal or by covering them with walking boards. They did not, like the defective winch in *Scindia,* form part of the structure of the vessel. In addition, the battens were designed to provide ventilation during transit, and not to assist in cargo removal operations.

However, even if we were to extend the meaning of cargo removal gear so as to encompass the ventilation battens, it still would not follow that plaintiff would be entitled to recover against the Shipowner. Plaintiff has totally failed to establish by a preponderance of the evidence that his injuries resulted from any defective condition of the battens. Indeed the Court finds it was as likely, if not more likely, that the hole into which plaintiff stepped resulted from the removal of some of the battens, rather than from any defect in the battens themselves. Moreover, as has been previously noted, the Shipowner was entitled to assume that any dangerous condition created by conditions of the battens would be remedied by the Stevedore.

terer. First, the record is devoid of any evidence that plaintiff was an intended beneficiary of the Contract of Affreightment, and the Contract of Affreightment itself contains no provision conferring third party beneficiary status upon the plaintiff. *Ogden Development Corp. v. Federal Insurance Co.,* 508 F.2d 583, 588 (2d Cir.1974). Secondly, even assuming that plaintiff were an intended third party beneficiary, nothing in the contract obligates the Charterer to inspect the vessel or to make it safe for longshoremen to work in. Moreover, plaintiff's reliance on paragraph 4H of the Contract of Affreightment as support for the proposition that the vessel's crew were employees of the Charterer is misplaced since that provision merely provides that, in consideration of the freight paid by the Charterer, the vessel's crew would provide certain services. Defendant Shipowner's Exhibit 12, para. 4H.

Finally, plaintiff's argument that liability should be imposed on the Charterer because it customarily supplied its employee, the Stevedore, with plywood for use as walking boards and failed to do so on the day plaintiff was injured lacks merit. Even assuming arguendo that plaintiff's assertions are correct, plaintiff clearly lacks standing to claim against the Charterer for its failure to supply the plywood boards, because any duty to supply such boards ran to the Stevedore and not to the plaintiff. Moreover, even if plaintiff did have standing, it still would not follow that that conduct could be the proximate cause of plaintiff's injury. The Stevedore was primarily responsible for the safety of conditions during discharge and was under an obligation to stop that operation if, in fact, a lack of adequate planking rendered the cargo hold unsafe. Accordingly, defendants are entitled to judgment. Defendants' cross-claims are dismissed as moot.

It is SO ORDERED.