**Howard SCHOLL**

v.

**CHUANG HUI MARINE CO., LTD., et al.**

**Civ. No. N–85–45 (PCD).**

United States District Court, D. Connecticut.

Oct. 16, 1986.

Barry P. Beletsky, Sperandeo, Weinstein & Donegan, New Haven, Conn., for plaintiff.

Alice S. Miskimin, Jacobs, Grudberg, Belt & Dow, New Haven, Conn., for defendant Frota Nacional de Petroleiros.

Robert K. Marzik, Stratford, Conn., for defendant Chung Hai Marine.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff, a petroleum inspector, claims to have been injured on November 1, 1983, when he slipped on an oily substance on the deck of the tanker "M/T Product Splendor" which was then docked in New Haven harbor. Defendant Frota Nacional de Petroleiros ("Fronape") is the transportation division of Petroleo Brasileiro S.A. ("Petrobras"). Petrobras, a Brazilian public corporation under the direct control of the Brazilian government, had contracted through Fronape to hire the "Product Splendor" for a twelve month period to carry petroleum products from Brazil to North America. Petrobras/Fronape negotiated the contract to hire with Tradaz Ocean Transportation S.A. which acted "for and on behalf of the owners." Defendant Chuang Hui Marine Co., Ltd. ("Chuang Hui") is the undisputed owner of the ship.

Defendant Fronape moves for summary judgment, Rule 56, Fed.R.Civ.P., on the ground that it is a time charter party with no responsibility for the governance of the ship or the negligence of the crew. For the reasons set forth below, Fronape's motion is granted.

*Discussion*

■ The duty to maintain decks in a seaworthy condition is that of the shipowner. *Camiolo v. Felicitas-Rickmers Line K.G. & Co.*, 449 F.Supp. 18, 20 (S.D. N.Y.1978). A time charterer assumes no responsibility for the unseaworthiness of the vessel or the negligence of the crew unless the charter agreement provides otherwise. *George v. Intercontinental*

*Transp., Ltd.,* 566 F.Supp. 275, 279 (S.D.N.Y.1983). The Supreme Court has said:

> If the charter-parties let the entire vessel to the charterer with a transfer to him of its command and possession and consequent control over its navigation, he will generally be considered as owner for the voyage or service stipulated. But, on the other hand, if the charter-party let only the use of the vessel, the owner at the same time retaining its command and possession, and control over its navigation, the charterer is regarded as a mere contractor for a designated service, and the duties and responsibilities of the owner are not changed.

*Leary v. United States,* 81 U.S. (14 Wall.) 607, 610, 2 L.Ed. 756 (1872).

■ A charterer is treated as an owner only in the case of a "demise" or "bareboat" charter. *Guzman v. Pichirilo,* 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962). To create a demise, the owner of a vessel must "completely and exclusively relinquish possession, command and navigation" of the ship to the charterer so that the latter becomes an owner *pro hac vice.* G. Gilmore and C. Black, *The Law of Admiralty* § 4–20 (2d ed. 1975); *Reed v. The Yaka,* 373 U.S. 410, 412, 83 S.Ct. 1349, 1351, 10 L.Ed.2d 448 (1963). Anything less than complete relinquishment of control is either a time or voyage charter party, or not a charter party at all. *Guzman,* 369 U.S. at 700, 82 S.Ct. at 1096.

■ Where a written contract defines the duties between owner and charterer, whether or not the charterer assumes the duties and responsibilities of ownership turns on the terms of the contract. *Leary,* 81 U.S. (14 Wall.) at 610. Where a charter provided that the costs of cargo handling were to be borne by the time charterer, the time charterer was liable to the owner for an injury directly related to the loading or discharging of cargo, but operational responsibility was not transferred from the owner. *Fernandez v. Chios Shipping Co.,* 542 F.2d 145, 151–153 (2d Cir.1976). A time charterer was not liable for injuries sustained by a longshoreman as a result of ice on the vessel's deck where the evidence disclosed no intent between the parties for the charterer to assume responsibility for maintenance of the decks during stevedoring, and where the accident had nothing to do with the proper or improper storage of cargo. *Camiolo,* 449 F.Supp. at 20. Where a longshoreman's death from falling through an open hatch cover during loading was due to an unreasonably safe workplace, liability did not shift to the time charterer by virtue of a charter clause providing that the captain, appointed by the owner, would be the time charterer's agent in matters involving the loading and storage of cargo. *Migut v. Hyman-Michaels Co.,* 571 F.2d 352, 354–355 (6th Cir.1978). That the time charterer may select the route to be taken or the cargo to be carried does not make him the owner *pro hac vice. Fitzgerald v. A.L. Burbank & Co.,* 451 F.2d 670 (2d Cir.1971).

The contract in issue is specifically entitled "Time Charter Agreement." Per Clause 2, the owners shall make the vessel: (a) "in every way fit to carry" the intended cargo and (b) "tight, staunch, strong, in good order and condition ... and with a full and efficient complement of master, officers ... and crew...." The owners also warrant that "throughout the period of service under this charter they will, whenever the passage of time, wear and tear or any event ... requires steps to be taken to maintain the vessel ... or to restore the vessel to [good] condition, exercise due diligence to maintain or restore the vessel as aforesaid...." Clause 13, ¶ 2 obligates the charterers to employ and pay stevedores when necessary, but states that "this shall not relieve owners from responsibility, at all times, for proper stowage, which must be controlled by the master, who shall keep a strict account of all cargo loaded and discharged." Clause 13 further provides: "Owners hereby indemnify Charterers, their servants and agents, against all losses, claims, responsibilities and liabilities arising in any way whatsoever from the employment of pilots, tugboats or stevedores who although employed by Char-

terers shall be deemed to be in the service of owners." Fronape's motion for summary judgment is based principally on the preceding clauses in the charter agreement.

In resolving a motion for summary judgment, the moving party has the burden of establishing "that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Courts must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Heyman v. Commerce & Indust. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). In this Circuit, summary judgment in contract actions is appropriate only when the language of the contract is "wholly unambiguous." *Wards Co., Inc. v. Stamford Ridgeway Associates,* 761 F.2d 117, 120 (2d Cir.1985).

■ Plaintiff seeks to resist Fronape's motion by urging a construction of the contract favorable to his claim. Plaintiff claims that there is a genuine issue of fact as to the respective liabilities of the parties to the contract. Plaintiff's argument is based mainly on Chuang Hui's denial of the following request for admission: "On or about May 28, 1983 Defendant Chuang Hui Marine Co., Ltd. and/or its agents or employees as owners of the tank vessel called 'M/T Product Splendor' executed and entered into a Time Charter Agreement in which the Defendant Petroleo Brasileiro S.A. (Petrobras) was the Capital Charterer." From said denial plaintiff speculates that perhaps "the vessel at issue was subject to a subsequent 'demise' or 'bareboat' charter or other amendment to the contract absolving it from liability and leaving Plaintiff without recourse for the serious injuries he has suffered [if Fronape were let out of the case]." Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Plaintiff's Memorandum") at 3. The mere possibility that something may turn up at trial is not sufficient to defeat a motion for summary judgment. *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969). Plain-

tiff has submitted no evidence whatsoever of a demise or bareboat charter to counter Fronape's contention that the operative agreement is a standard time charter contract.

■ Plaintiff also argues that two clauses of the Agreement create ambiguity as to liability in this case. Clause 13 provides: "The master (although appointed by Owners) shall be under the orders and directions of Charterers as regards employment of the vessel, agency or other arrangements." Plaintiff asserts that the "clear intent of this provision is to give control of the vessel to the Charterers." Plaintiff's Memorandum at 3–4. Far from being "clear," however, plaintiff's construction of Clause 13 is without merit. That clause is specifically limited to "the employment" of the vessel—i.e., how it is to be used—which is one of the only aspects of the transaction which a charterer "controls."

> The owner runs and mans the ship, and takes responsibility for procuring and paying for all things connected with that duty; the charterer says where she is to go and with what she is to be loaded; he bears the expenses that vary with the manner in which he exercises these options.

Gilmore and Black, *The Law of Admiralty* § 4–14 at 229.

■ Plaintiff also alleges ambiguity in Clause 28, quoted as follows: " ... the vessel, her master and owners shall not, unless otherwise in this charter expressly provided, be responsible for any loss or damage arising or resulting from any act, neglect or default of the master, pilots, mariners or other servants of owners in the navigation or management of the vessel." Plaintiff's Memorandum at 4. Plaintiff's use of ellipsis to omit the *first* words in Clause 28 masks that that clause, in full, furnishes no support for plaintiff's legal position. Such a drafting ploy in a memorandum filed in court is not in keeping with the obligations of counsel. Clause 28 begins: *"Save that Clauses 1, 2 and 24 hereof shall be unaffectd hereby.... "* (Em-

phasis added). By excepting those clauses, Clause 28 thereby incorporated the Owner's warrantees to keep the vessel "in good order and condition" (Clause 2); to "exercise due diligence to maintain or restore the vessel" (Clause 2); and "to use their best endeavors so to maintain the vessel during the period of her service" (Clause 24). Thus, Clause 28 is wholly unambiguous and does not raise a question of fact as to the relative obligations of owner and charterer.

Accordingly, Fronape, as a time charterer, is entitled to summary judgment.

SO ORDERED.