841 F.Supp. 284 (1993)
Phyllis S. STAFFORD, et al., Plaintiffs,
v.
INTRAV, INC., et al., Defendants.
No. 89-0858-C (9).
United States District Court, E.D. Missouri, E.D.
January 5, 1993.
*285 Stephen F. Meyerkord, Casey and Meyerkord, St. Louis, MO, for plaintiffs.
David V. Capes, Adam E. Miller, Rosenblum and Goldenhersh, St. Louis, MO, for defendants.

MEMORANDUM
JACKSON, District Judge.
This matter is before the Court upon the renewed motion of defendant Intrav, Inc. for partial summary judgment.[1]
Plaintiff Phyllis S. Stafford brings this action to recover damages for physical injuries she sustained on April 30, 1988 when she fell from a platform on a cruise ship, the M.S. Olympia. The plaintiff had purchased a package tour arranged by defendant Intrav that included a cruise aboard the M.S. Olympia on the Dutch inland waterways. The M.S. Olympia was owned by Scylla Tours AG, a Swiss company, and plaintiff was a passenger on the vessel at the time of the accident. In the second amended complaint plaintiff claims that the defendant was negligent *286 in failing to warn her of the dangerous condition, a gangway opening, that led to her injuries and in failing to take action to protect her from harm, and that the defendant breached an implied contract to provide safe passage for plaintiff. Plaintiff's husband also asserts a claim for loss of consortium. Windsor, Inc. and International Travel Advisors, Inc. are named as defendants in addition to Intrav.
Defendant Intrav, the tour operator, chartered the M.S. Olympia from Scylla pursuant to a written charter agreement. The charter agreement provides, inter alia, that Intrav was to provide a travel director, tour leader and a tour guide. Although the agreement contains no specific language regarding the provision of the crew to operate the vessel, it is undisputed that the captain and the crew of the vessel were employees of Scylla. The agreement contains provisions reserving to Scylla the right to alter the tour program in the event of low or high water levels, sailing prohibition, ship defects, or defective locks. It further provides that Scylla would maintain an insurance policy covering the claims of third parties and passengers for personal injury and property damage arising from the operation of the vessel and indemnifying Intrav against such claims.
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 1355-1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
In support of its motion, defendant Intrav argues that it cannot be held liable to plaintiffs because it was not a demise charterer of the vessel. In the absence of a demise, a charterer has no responsibility for the negligent operation or maintenance of the vessel or for the negligence of its crew. Federal Barge Lines, Inc. v. SCNO Barge Lines, Inc., 547 F.Supp. 457, 459 (E.D.Mo. 1982), aff'd, 711 F.2d 110, 111 (8th Cir.1983); Scholl v. Chuang Hui Marine Co., Ltd., 646 F.Supp. 137, 138-139 (D.Conn.1986). It is firmly established that "[t]o create a demise the owner of the vessel must completely and exclusively relinquish `possession, command, and navigation' thereof to the demisee." Guzman v. Pichirilo, 369 U.S. 698, 699, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962), citing United States v. Shea, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403 (1894), Leary v. United States, 81 U.S. (14 Wall.) 607, 20 L.Ed. 756 (1872), and Reed v. United States, 78 U.S. (11 Wall.) 591, 20 L.Ed. 220 (1871). When a demise has been created, the charterer becomes the owner of the vessel pro hac vice and assumes the duties and responsibilities of such ownership. Id.; Scholl, 646 F.Supp. at 139. No demise is created, however, when there has been anything less than complete relinquishment of control. Id.
Whether a demise has been created is determined by the intent of the parties. This intent may be ascertained from the language of the charter, unless the parties' actions are inconsistent therewith. Federal *287 Barge Lines, 547 F.Supp. at 459-460. In the instant case, the charter agreement between Scylla and Intrav contains no language expressly creating a demise. Further, the language of the agreement does not evince any intention by the parties to create a demise. As noted above, Scylla reserved the right to change the cruise program when certain circumstances were present and agreed to maintain insurance against claims arising from the operation of the vessel. These provisions are not consistent with a complete relinquishment of control. Additionally, the individuals responsible for maintaining and navigating the vessel were employed by Scylla. There is nothing in the charter agreement that suggests that the personnel to be provided by Intrav (i.e., the travel director, tour leader and tour guide) had any responsibility for the vessel's operation. Thus, the Court concludes that Intrav was not a demise charterer of the M.S. Olympia at the time of plaintiff Phyllis Stafford's injury.
The plaintiffs argue that, notwithstanding the existence or non-existence of a demise, the defendant may be held liable for breaching its duty to protect Mrs. Stafford from the unreasonable risk of harm presented by the gangway opening. In this regard, plaintiffs cite Restatement (Second) of Torts § 314A which describes four special relationships that give rise to a duty to aid or protect: (1) common carrier and passenger; (2) innkeeper and guest; (3) business invitor and invitee; and (4) a person who is required by law or who voluntarily takes custody of another under circumstances depriving the other of his normal opportunities for protection. There are no facts, however, to support a conclusion that any one of these special relationships existed between plaintiffs and Intrav.
As discussed above, Intrav's role was merely that of tour operator. Plaintiff Phyllis Stafford's injury did not occur on premises under defendant's control as Intrav did not own or maintain the M.S. Olympia nor was it responsible for placement of the gangplank. Intrav was not a common carrier or an innkeeper, nor was its relationship with the plaintiffs one of business invitor/invitee. See, Semmelroth v. American Airlines, 448 F.Supp. 730, 732 (S.D.Ill.1978). Further, Intrav did not have custody of plaintiff Phyllis Stafford such that it deprived her of normal opportunities to protect herself.
Plaintiffs also argue that Intrav, as their agent, had a duty to warn plaintiff Phyllis Stafford of the dangerous opening near the gangplank. In its tour brochure, Intrav states, in relevant part:
RESPONSIBILITY: INTRAV, its affiliated and subsidiary companies and agents act only as agents for the tour participants in regard to transportation, accommodations, food and other goods and services provided to the tour participant and assume no liability or responsibility for any injury, damage, loss, accident, delay or irregularity with respect to persons or property occasioned by any cause whatsoever, whether direct or indirect, beyond INTRAV'S control.
The foregoing language makes it clear that Intrav agreed to be plaintiffs' agent for certain purposes. Additionally, Missouri law recognizes that "a travel agent who arranges vacation plans and therefore acts as more than a `ticket agent' is a special agent of the traveler for the purposes of that one transaction between the parties," and as such the agent has a duty to disclose reasonably obtainable information that is material to the object of the agency. Markland v. Travel Travel Southfield, Inc., 810 S.W.2d 81, 83 (Mo.App.1991) citing, McCollum v. Friendly Hills Travel Center, 172 Cal.App.3d 83, 217 Cal.Rptr 919 (1985) (other citations omitted). However, this duty is not breached by the agent's failure to disclose information that is obvious and apparent to the traveler. Id. at 84.
Plaintiff Phyllis Stafford testified in deposition that just prior to her fall she had been standing on a "precipice" near the gangplank talking to Intrav's cruise director, Stefan Pohu. The boat was still docked at that time, and plaintiff was about to disembark to go for a walk with her husband. Other passengers were congregating nearby in the lobby area inside the vessel and on the gangplank. Plaintiff testified that when she stepped backward to allow someone to pass on the gangplank, she fell. In his affidavit, *288 Stefan Pohu states that he did not know that Mrs. Stafford was about to step backward or to fall.
The accident occurred at approximately 9:00 P.M. on the day the plaintiffs arrived on the M.S. Olympia. Mrs. Stafford testified that several times earlier that day she had walked on the same gangplank that was near the platform from which she fellonce when she initially boarded the vessel and again when she went on a sightseeing tour.
Although Mrs. Stafford testified that she did not realize she was stepping backward into an open space, the recess through which she fell was not concealed. Under plaintiffs' theory of the case, the defendant had a duty to tell her of the obvious danger and to prevent her from succumbing to it. The law, however, imposes no such duty. Markland, supra. See also, Connolly v. Samuelson, 671 F.Supp. 1312, 1317 (D.Kan.1987); Lavine v. General Mills, Inc., 519 F.Supp. 332, 335 (N.D.Ga.1981).
The plaintiffs next claim that Intrav, as their agent, had a duty to use reasonable care in selecting the vessel upon which to conduct the tour. It is undisputed that Intrav conducted an inspection of the M.S. Olympia and investigated the vessel's owner, Scylla, prior to the charter. The information Intrav gleaned from these efforts was that the M.S. Olympia was regarded as an excellent vessel and that Scylla had an equally favorable reputation within the travel industry. There is nothing in the record to suggest that Intrav was or should have been aware of prior similar accidents involving the gangway opening or that any such accidents had, in fact, occurred. The facts in this case fail to support plaintiffs' negligent selection claim. See, Wilson v. American Trans Air, Inc., 874 F.2d 386, 390 (7th Cir.1989).
Finally, the plaintiffs assert that Intrav breached an implied contract of safe passage that arose from the parties' travel agreement. In its tour brochure Intrav disclaimed responsibility for injury or damage resulting from causes beyond its control. No warranty or contract of safe passage can be inferred from this disclaimer and plaintiffs have pointed to no other language in the tour brochure from which such a contract may be inferred. See, Lavine, 519 F.Supp. at 336-337. Additionally, as discussed above Intrav did not own the M.S. Olympia and it did not control the operation of the vessel, including the placement of the gangplank. Thus, Intrav had no legal responsibility for the safety of the vessel and there is no evidence that Intrav voluntarily undertook any such responsibility.
For the foregoing reasons, the Court concludes that defendant Intrav is entitled to judgment as a matter of law. The motion for summary judgment will, therefore, be granted.
NOTES
[1] In response to the issues raised in plaintiffs' memorandum in opposition to the motion for partial summary judgment, defendant Intrav now moves for summary judgment upon all claims asserted by the plaintiffs.