**Dora MAYER and Simon Mayer, Libelants-Appellants,**

v.

**ZIM ISRAEL NAVIGATION CO., Ltd., Respondent-Appellee.**

**No. 121, Docket 26411.**

United States Court of Appeals Second Circuit.

Argued Dec. 9, 1960.

Decided Dec. 29, 1960.

Rehearing Denied May 17, 1961.

See also 177 F.Supp. 69.

Clark, Circuit Judge, dissented on petition for rehearing.

Nathan Schwartz, New York City, for libelants-appellants.*

Silas B. Axtell, New York City, for libelants-appellants on petition for rehearing.

Kirlin, Campbell & Keating, New York City (Matthew L. Danahar and Edward J. Hale, New York City, on the brief), for respondent-appellee.

Before CLARK, WATERMAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Mrs. Mayer embarked at Haifa, Israel, as a passenger on the respondent's vessel, S.S. Israel, destined to New York. She was assigned an upper berth. As

---

* Upon the calendar call, Mr. Schwartz advised us that he had been relieved, and also that he wished the Court to know he was not the author of certain pages of appellants' brief and did not approve the appendix. At our suggestion he remained in the courtroom; when the case was called for argument, he stated appellants had requested him to argue and did so. The Court commends counsel's conduct under these circumstances.

the ship was leaving Haifa, she fell from the berth and suffered a serious fracture of the left leg at its junction with the hip. She claims damages for her injuries, as does her husband for loss of services and consortium.

Mrs. Mayer's testimony was that the ladder by which she had climbed to the upper berth was movable and that she fell while reaching for it in order to descend. Her claim appears to be that it was negligent to have a movable ladder, or at least to have one positioned as she stated this to have been, with no instructions given as to how to reach the ladder and no bell available in the upper berth. She testified also that, after the fall, the ship's doctor violently rotated the injured leg for several minutes; that four men then dragged her along the deck to the ship's hospital, where she remained until taken from the boat at Naples for surgery; and that her request to the doctor to be put ashore at Haifa for immediate medical attention was refused. The steward testified that the ladder was permanently affixed to the berth at a place easily reached. Two fellow passengers in the same cabin gave testimony which the judge, in his opinion dictated at the close of the trial, characterized as to the same effect, although cross-examination had developed that their only unqualified assertions related to the ladder which served another berth. And defendant contended that photographs of the cabin showed it was physically impossible for the ladder to have been where Mrs. Mayer claimed.

Judge Dawson dismissed the libel. He declined to accept Mrs. Mayer's testimony that the ladder was not affixed to the berth. He found her claim as to having been dragged along the deck to be "so utterly inconceivable as to be unworthy of credence" and to cast doubt on all her testimony. He rejected her testimony that the doctor had rotated the injured leg for a number of minutes. He did not discuss the claim that respondent breached its duty by failing to heed Mrs. Mayer's request to be put ashore.

Plainly the trial judge's refusal to accept Mrs. Mayer's version of the cause of the accident and to credit her testimony as to being dragged along the deck was not clearly erroneous. We likewise cannot find it was clearly erroneous to refuse to credit her testimony as to the overly energetic and prolonged manipulation of the injured leg, even though this was uncontradicted and an inference favorable to her might have been drawn from respondent's unexplained failure to produce the testimony of the ship's doctor. For "The witness' demeanor, not apparent in the record, may alone have 'impeached' him," Broadcast Music, Inc. v. Havana Madrid Restaurant Corp., 2 Cir., 1949, 175 F.2d 77, 80. Cf. Dyer v. MacDougall, 2 Cir., 1952, 201 F.2d 265, 269. Here, in addition, there was what the judge was warranted in finding to be the incredibility of Mrs. Mayer's testimony as to the dragging and the contradiction of this by other passengers and by her own deposition, as well as statements on her part as to the time she had held her ticket in advance of sailing, as to the duration of the voyage to Naples, and as to the length of her hospitalization there, all of which, to say the least, were proven to be inaccurate in a sense uniformly favorable to her case. We, therefore, do not reach the interesting question whether the decision in Laubheim v. DeKoninglyke N. S. M., 1887, 107 N.Y. 228, 13 N.E. 781, that "If, by law or choice, the defendant was bound to provide a surgeon for its ships, its duty to the passengers was to select a reasonably competent man for that office, and it is liable only for a neglect of that duty," still represents the common law of New York, or constitutes a correct interpretation of general maritime law [1] applicable to pas-

---

1. No evidence of Israeli law was offered. The judge stated in his oral opinion that "it was stipulated that the Court might decide the issues under the applicable law of New York." Both this remark and the transcript leave us in some doubt whether the stipulation referred to the "common law" of New York, or the

sengers although it surely does not with respect to seamen suing for maintenance and cure or under the Jones Act, 46 U.S.C.A. § 688, see DeZon v. American President Lines, Ltd., 1943, 318 U.S. 660, 666–668 and note 2, 63 S.Ct. 814, 87 L.Ed. 1065.

■ Neither do we find reversible error in the judge's failure to hold that defendant breached its duty by refusing to heed Mrs. Mayer's request to be put ashore while the boat was still near port at Haifa, or at least to make a finding on that issue; for there was no evidence that this aggravated the injury. Libelant's medical expert could not "say just how much of an effect waiting three days would have" and respondent's expert testified it would have none. Hence we likewise do not reach respondent's claim, decided against it by Judge Cashin on a motion for summary judgment, D.C.S.D. N.Y.1959, 177 F.Supp. 69, that libelant is barred by a clause in the ticket requiring suit to be brought within a year after the passenger has landed—decision of which would involve the application and validity of the admittedly formal and often subtle distinctions developed from the rule in The Majestic, 1897, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039, by such cases as Baer v. North German Lloyd, 2 Cir., 1934, 69 F.2d 88; The Leviathan, 2 Cir., 1934, 72 F.2d 286; Maibrunn v. Hamburg-American S.S. Co., 2 Cir., 1935, 77 F.2d 304; Bellocchio v. Italia Flotte Riunite, 2 Cir., 1936, 84 F.2d 975; The Kungsholm, 2 Cir., 1936, 86 F.2d 703; Baron v. Compagnie Generale Transatlantique, 2 Cir., 1939, 108 F.2d 21; Foster v. Cunard White Star, Ltd., 2 Cir., 1941, 121 F.2d 12; Murray v. Cunard S.S. Co., 1923, 235 N.Y. 162, 139 N.E. 226, 26 A.L.R. 1371; and Reichman v. Compagnie Generale Transatlantique, 1943, 290 N.Y. 344, 49 N.E.2d 474.

Judgment affirmed.

law that New York would apply in a maritime matter in a case not governed by a specific foreign law, which as we know now, although it was not known in

## On Petition for Rehearing

PER CURIAM.

The petition for rehearing is denied.

CLARK, Circuit Judge (dissenting).

Both the trial court and the original opinion of this court assumed that this case was governed by the question whether libelant's or respondent's account of the position of the ladder was correct. Libelant testified that she ascended to her upper berth by means of a movable ladder given her by the steward, and that the steward then removed the ladder and placed it next to the door adjacent to her berth. After she was in the berth a period of time, libelant reached out in order to secure the ladder to descend, and fell out of the berth, causing severe injury to herself. A quite different version of the accident was given by respondent, whose witnesses testified that libelant's berth had a permanently affixed ladder. The district court accepted this latter testimony, and concluded that respondent was not negligent and that the sole cause of the accident was libelant's contributory negligence. On appeal, the only asserted error was the trial court's failure to accept libelant's version of the accident. Since there was substantial, indeed persuasive, evidence that the ladder was permanently affixed as described by respondent's witnesses, we affirmed the judgment below.

At this point, plaintiff engaged new counsel and petitioned for rehearing. Our attention was then drawn for the first time to the possibility that, even accepting respondent's account as to the permanent placement of the ladder, respondent was negligent because such placement made access to the ladder unreasonably difficult and awkward. Photographs of libelant's cabin show that the ladder is affixed to the side of the upper berth at the head end of the bunk. Be-

1887, would be the general maritime law. See Gilmore & Black, The Law of Admiralty, pp. 374 ff. It does not appear necessary to resolve this.

tween the ladder and the sleeping surface of the bunk is a sideboard extending more than a foot to the left and right of the ladder and rising above the surface of the bunk. It would seem that the necessity of climbing over this board makes it difficult for a person to get on to the ladder from the upper bunk. Indeed, one of libelant's fellow passengers testified that she and the libelant both had trouble with the bunk because it was a "little complicated."

Thus I think new factual and legal issues have been raised as to whether respondent was negligent in the manner of placement of the ladder and as to whether this negligence proximately caused libelant's injuries. It is clear from the opinion below that the trial court never considered these issues, but rather assumed that the respondent would be absolved if its version as to the placement of the ladder were accepted. In my view, this was error. Accordingly I would reverse and remand for findings in the light of whatever additional evidence is thought necessary bearing on the questions whether respondent was negligent in its placement of the ladder and whether this negligence proximately caused libelant's injuries.

I do not think libelant should be denied relief simply because the above basis for finding respondent negligent was not recognized until rehearing. The evidentiary basis for recovery was established at trial, through the respondent's own witnesses, and its disregard would seem to be plain error. That libelant, a highly nervous woman grievously injured, gave a contrasting account of the accident after periods of understandable stress [1] should not be given controlling importance to the exclusion of this evidence bearing so directly on the primary issue of negligence. That her original lawyer, faced with these difficulties of ascertaining the facts, and with an additional barrier of language (she had to testify through an interpreter), did not quickly grasp the way the trial was shaping up and immediately change his theory seems understandable.[2] True, the district judge found her testimony untrustworthy for reasons not closely in point here, since they bore upon her later medical treatment;[3] but I see no reason to penalize her in her claim for damages, since the respondent developed the testimony and obviously cannot be considered as prejudiced by what it itself brought into the case. And the idea that for some procedural reason she should not now be allowed to change her legal theory to conform to the evidence, on an issue well within the terms of her original libel, seems unworthy of a modern court obligated to do justice, rather than merely to vindicate legal procedure.

I therefore dissent from the denial of libelant's petition for rehearing.

1. Immediately upon her fall she was taken to the ship's hospital, remaining there under sedatives—"shouting" and "crying," as she testified—for six days until the ship reached Naples, where she was hospitalized for 3½ months, before coming to this country, where she was again hospitalized. Under the circumstances remembrance of the details of her accident—so quickly occurring—might well be fuzzy.

2. Difficulties of rapport between client and counsel persisted through the argument of this appeal, as is shown by the star (*) footnote of the opinion.

3. For understandable reasons he did not believe her testimony that the doctor and attendants "pulled her like an animal on the floor." But this exaggerated statement obviously stems from her not unnatural anger at the considerable delay in treatment while the vessel proceeded from Haifa to Naples.