## GUZMAN v. PICHIRILO.

No. 358. Argued March 27, 1962.—Decided May 21, 1962.

*Harvey B. Nachman* argued the cause for petitioner. With him on the briefs was *Max Goldman*.

*Seymour P. Edgerton* argued the cause and filed briefs for respondent.

MR. JUSTICE CLARK delivered the opinion of the Court.

Petitioner, a longshoreman, was injured while unloading the M/V *Carib*, of Dominican registry, when a shackle broke causing one of the ship's booms to fall upon and severely injure him. He brought this suit in admiralty to recover damages resulting from the unseaworthy condition of the ship. The libel was *in rem* against the *Carib* and *in personam* against respondent Pichirilo, her owner. The defense was that the *Carib*

had been demised to petitioner's employer, Bordas & Company, at all times pertinent hereto, including the time when the unseaworthy condition arose. The United States District Court for the District of Puerto Rico, where the *Carib* lay, held against the ship and the respondent Pichirilo, finding there was no such demise, and judgment for $30,000 was awarded. The Court of Appeals reversed, holding that the *Carib* was under a demise to petitioner's employer, which relieved the owner of personal responsibility for unseaworthiness, and that the *Carib* was not liable *in rem* because no personal responsibility could be visited upon either the owner or the charterer.[1] 290 F. 2d 812. There being a conflict on the latter point between the Courts of Appeals, see *Grillea* v. *United States,* 232 F. 2d 919 (C. A. 2d Cir. 1956), we granted certiorari, 368 U. S. 895.[2] Concluding that the District Court's findings relative to the operative facts of a demise charter party were not clearly erroneous, we hold that the Court of Appeals erred in reversing its judgment.

To create a demise the owner of the vessel must completely and exclusively relinquish "possession, command, and navigation" thereof to the demisee. *United States* v. *Shea,* 152 U. S. 178 (1894); *Leary* v. *United States,* 14 Wall. 607 (1872); *Reed* v. *United States,* 11 Wall. 591 (1871). See generally Gilmore & Black, The Law of Admiralty, 215–219; Robinson, Admiralty, 593–601; Scrutton, Charterparties (16th ed., McNair & Mocatta),

---

[1] Since the alleged charterer was petitioner's employer, its liability to him was statutorily limited by the Puerto Rico Workmen's Accident Compensation Act. 11 L. P. R. A. § 21.

[2] After certiorari was granted in this case, the Court of Appeals for the Third Circuit, faced with a demise to the longshoreman's employer, aligned itself *in toto* with the position of the Court of Appeals for the First Circuit. *Reed* v. *The Yaka,* 307 F. 2d 203 (1962).

4–7. It is therefore tantamount to, though just short of, an outright transfer of ownership. However, anything short of such a complete transfer is a time or voyage charter party or not a charter party at all. While a demise may bring about a change in the respective legal obligations of the owner and demisee, *ibid.*, we need not decide here whether it relieves the owner of his traditional duty to maintain a seaworthy vessel, for under our view of the record the trial court's determination that there was no demise charter party must stand.[3]

The owner who attempts to escape his normal liability for the unseaworthiness of his vessel on the ground that he has temporarily been relieved of this obligation has the burden of establishing the facts which give rise to such relief. Thus, assuming *arguendo* that a demise charter party would isolate the owner from liability, the owner has the burden of showing such a charter. This burden is heavy, for courts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relationship. *E. g., Reed* v. *United States, supra,* at 601. To establish a demise the owner in the instant case offered only the testimony of the director-partner of the claimed demisee, petitioner's employer.[4] He testified that his company had complete control over and responsibility for the operation of the *Carib*, in consideration of which the owner was paid $200 monthly. He explained that his company's agreement with the owner was "a kind of charter, because it does not comply with the regular provisions of a charter party. I pay the seamen, food, repair, maintenance, drydocking; which in a regular charter party are excluded." To negate the existence of a demise the petitioner offered the deposition

---

[3] Similarly, we do not pass on whether the vessel can be held liable *in rem* when neither the demisee nor the owner is personally liable.

[4] Our view of the case makes it unnecessary to determine whether a demise charter party can be created without a written document.

of the Captain of the *Carib*, who testified simply that he was employed by the owner. On the basis of this evidence the trial court *found* that the owner "was at all times mentioned in the libel . . . in possession and control of the vessel M/V 'CARIB.' " In addition that court pointed out that the only witness offered to prove the existence of a demise had admitted there was no charter and that the Captain of the vessel had testified he was working for the owner, not Bordas & Co. The Court of Appeals in reversing thought the trial court had been misled as to the legal significance of the testimony and that this, as opposed to a refusal to believe the testimony of the owner's witness, had prompted it to conclude there was no charter.

It is true, as the Court of Appeals pointed out, that the equivocation by the witness for the owner on the nature of his company's arrangement is not inconsistent with the existence of a demise charter party, for the very elements he thought made the arrangement "a kind of charter" are inherent in a demise charter party. See authorities cited, p. 699, *supra*. And it is equally true the fact that the Captain is employed by the owner is not fatal to the creation of a demise charter party, for a vessel can be demised complete with captain if he is subject to the orders of the demisee during the period of the demise. *United States* v. *Shea, supra,* at 190; Robinson, *op. cit., supra,* 594–595. If we were convinced, as was the Court of Appeals, that the trial court's action was colored by a misunderstanding of such legal principles, we would have to remand, as the Court of Appeals should have, for further findings by the trial court on the credibility of the owner's witness. *E. g., Kweskin* v. *Finkelstein,* 223 F. 2d 677, 679 (C. A. 7th Cir. 1955). However, we have concluded that the trial court clearly disbelieved the testimony offered by respondent to establish a demise charter party. The trial judge not only found that respondent

was in complete possession and control of the vessel, which in and of itself indicates disbelief in the witness' testimony, but upon the conclusion of the trial pointedly stated that he did not "believe that Bordas is the operator of the boat." This factual finding, rather than being tainted by an admission as to the legal relationship between the parties, appears to flow from the court's interpretation of the Captain's testimony. And to the extent this finding was based on such testimony, it cannot be said to have been influenced by an erroneous concept of a demise charter party. For as we read the record the Captain's testimony was sufficiently ambiguous for the trial court to reasonably construe it—as the court did—as saying he remained subject to the owner's control during the period of the alleged demise. Viewed in this light the testimony, of course, negates the existence of a demise. The determination of the factual content of ambiguous testimony is for the trial court, and such determination can be set aside on review only if "clearly erroneous." *United States* v. *National Association of Real Estate Boards,* 339 U. S. 485, 495–496 (1950).

The "clearly erroneous" rule of civil actions is applicable to suits in admiralty in general, *McAllister* v. *United States,* 348 U. S. 19, 20 (1954); see *Roper* v. *United States,* 368 U. S. 20, 23 (1961), and to the existence of the operative facts of a demise charter party in particular, *Gardner* v. *The Calvert,* 253 F. 2d 395, 399 (C. A. 3d Cir. 1958). Under this rule an appellate court cannot upset a trial court's factual findings unless it "is left with the definite and firm conviction that a mistake has been committed." *United States* v. *United States Gypsum Co.,* 333 U. S. 364, 395 (1948). A refusal to credit the uncorroborated testimony of the director-partner, who obviously was not disinterested in the outcome of the litigation, would not be considered clearly erroneous. See, *e. g., United States* v. *Oregon State Medical Society,* 343

U. S. 326, 339 (1952); *Mayer* v. *Zim Israel Navigation Co.*, 289 F. 2d 562, 563 (C. A. 2d Cir. 1960). This is especially so when such testimony is prompted by leading questions as was the case here.[5] *A fortiori* the refusal to accept such testimony, disputed as it was by the testimony of the Captain, cannot be considered clearly erroneous.

Since the trial court's determination that there was no demise charter party is not clearly erroneous, its holding that the owner is liable *in personam* and the vessel *in rem* must be reinstated. The case is therefore remanded to the Court of Appeals for further proceedings consistent with this opinion including the resolution of any questions it might have left unanswered on the assumption that there was no liability.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER took no part in the decision of this case.

MR. JUSTICE WHITE took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, dissenting.

Certiorari was granted in this case because it was thought that the legal principles underlying one aspect of the decision below were in conflict with those applied by the Second Circuit in *Grillea* v. *United States,* 232 F. 2d 919.

The Court, however, does not resolve that conflict, nor does it decide any other question of law not already established by its past decisions. Instead, the judgment below is reversed merely because this Court disagrees with the Court of Appeals' factual estimate of the case.

---

[5] At one point the judge interrupted the direct examination of the witness to point out he could not "give any credit to a witness answering leading questions."

Had the issue which the Court decides been the only question tendered by the petition for certiorari, the case could not well have been regarded as one for review by this Court. See *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500, 524, 559 (dissenting opinions). To reverse it now on what is essentially only an evidentiary ground is, in my view, an improvident use of the certiorari power: the Court has done no more than "to substitute its views" for those of the Court of Appeals on purely factual issues, reached upon a fair assessment of the trial record. 352 U. S., at 562–563. Respecting the legal issues which this Court does not decide, I think that the Court of Appeals was plainly correct in deciding them as it did.

I would affirm.