**R. D. WOOD COMPANY, Successor to Florence Pipe Foundry and Machine Company**

v.

**PHOENIX STEEL CORPORATION, Successor to Chester Blast Furnace, Inc.**

**No. 247 of 1959.**

United States District Court
E. D. Pennsylvania.

Dec. 27, 1962.

Having paid for the value of the entire cargo on April 29, 1955, Florence brings this suit to recover the amount paid for the pig iron not received, together with additional freight charges, interest and costs.

Beechwood & Lovitt, Philadelphia, Pa., for libellant.

Michael A. Foley, Philadelphia, Pa., for respondent.

CLARY, Chief Judge.

This action arises out of the sinking of the barge FELL LOVELAND on March 12, 1955, at respondent's pier. Libellant seeks recovery for the value of pig iron lost and not recovered when the barge was salvaged.

Libellant is the R. D. Wood Company, successor to Florence Pipe Foundry and Machine Company (hereafter referred to as "Florence"). Respondent is Phoenix Steel Corporation, successor to Chester Blast Furnace, Inc. (hereafter referred to as "Chester"). The barge FELL LOVELAND was owned by S. C. Loveland Co. Inc., and was chartered to Florence for the purpose of transporting pig iron from Chester's dock in Chester, Pennsylvania, to Florence's plant at Florence, New Jersey.

Certain facts are not controverted. The pig iron was sold by Chester to Florence f. o. b. vessel as Chester. Florence chartered the barge FELL LOVELAND, the maximum safe load of which was approximately 1,000 tons, from S. C. Loveland Co. Inc., to carry pig iron. Chester loaded a total of 1,144 gross tons, 1,940 pounds of pig iron on the barge. The barge master, James, refused to allow any excess to be removed and the barge sank sometime during the early morning hours of March 12, 1955.

The barge was later salvaged and most of the pig iron recovered and shipped to Florence by barge and rail. However, the balance of 140 gross tons, 1,940 pounds was never recovered or delivered.

## FINDINGS OF FACT

Certain questions ordinarily involved in this litigation have been determined in a limitation and exoneration proceeding brought by S. C. Loveland Co. Inc., in which both parties to the instant case appeared as claimants. Although Chester withdrew from that proceeding, it did so with prejudice and only after it had been present for and participated in the trial of the issues, and is therefore bound by the necessary findings of Judge Van Dusen, reported at D.C.Pa., 170 F.Supp. 786. The following facts determined in that opinion are applicable to and binding upon issues presently before the Court:

1. James, the master of the FELL LOVELAND, was negligent in not allowing Chester to remove the excess pig iron from the barge, or in not contacting his employers, S. C. Loveland Co. Inc. for instructions.

2. The barge sank because it was overloaded.

3. Florence had notified Chester of the safe capacity of the barge and was therefore not contributorily negligent in the overloading.

All the requested Findings of Fact for libellant are affirmed as stated, with the following exceptions:

(a) Request number 9 is amended to read: "It was the responsibility of the barge owner, S. C. Loveland Co. Inc., to provide for the movement of the Fell Loveland to Chester's dock for loading." There is no evidence in the record sufficient to establish responsibility for movement of the barge from Chester to Florence.

(b) Request number 20 is affirmed with the addition at its end of the words "in excess of 1,000 tons."

Respondent's requests numbers 2, 5 and 6 are affirmed; numbers 1, 3, and 4 are denied.

## DISCUSSION

■ Florence contends that the barge was negligently overloaded by Chester, thus causing the sinking of the barge, and the loss of the pig iron. Chester denies negligence, asserts that the negligence of James was a supervening cause, and argues that the charter was a demise of the barge under which Florence became chargeable with the master's negligence.

The record before the Court compels the conclusion that Chester did negligently overload the barge. Chester does not deny that 17 railway cars carrying 1,144 tons, 1,940 pounds of pig iron were loaded in spite of the fact that Chester knew that the maximum safe load was approximately 1,000 gross tons. Shortly before this instance, Chester had placed loads in the neighborhood of 1,070 tons on the FELL LOVELAND and had been specifically warned by Florence that this dangerously exceeded safe capacity.

Chester insists, however, that the refusal of the master to allow removal of the excess pig iron was a separate, intervening and superseding cause of the sinking. The Court cannot agree.

As provided in the Restatement of Torts, § 452:

"Failure of a third person to perform a duty owing to another to protect him from harm threatened by the actor's negligent conduct is not a superseding cause of the other's harm."

And in § 447:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or * * *"

It was within the ambit of foreseeability that the master of the FELL LOVELAND might negligently refuse to permit unloading of the excess cargo. Chester knew that on past trips, he had already carried excessive loads. The deliberate overloading of all kinds of freight carriers is a notorious and not uncommon custom. Had the overload been considerably more, James' actions may have been less likely. But, as the load was not greatly in excess of what the barge had carried before, it was not unforeseeable that James might want to risk the trip, negligent though that was.

The unsuccessful attempt by Chester to remove the pig iron and thus halt the effect of its negligence does not insulate it from liability. As stated in § 437 of the Restatement of Torts:

"If the actor's negligent conduct is [a] substantial factor in bringing about harm to another, the fact that after the risk has been created by his negligence the actor has exercised reasonable care to prevent it from taking effect in harm does not prevent him from being liable for the harm."

Once Chester's negligence created the risk, its efforts to prevent a harmul effect were of consequence only if successful.

Thus, Florence is entitled to recover unless barred by some negligence of its own. Judge Van Dusen has specifically found that Florence was not negligent in the overloading of the barge:

"Any negligence of Chester in overloading the barge and telling James that one, rather than two, extra cars had been loaded cannot be imputed to Florence, which had advised Chester that the loads should not exceed approximately 1000 tons. (N.T. 265–6)." In the Matter of

Petition of S. C. Loveland Co. Inc., et al., 170 F.Supp. 786, 791–792 (E.D.Pa.1959).

But, respondent argues, since the charter was of a barge without power, Florence became owner *pro hac vice* of the vessel and was responsible for the master's negligence. Numerous cases, particularly those arising out of New York harbor incidents, have found that the charter of a barge without power, even where accompanied by a master employed by the owner, is a demise and the charterer becomes the owner *pro hac vice*. The R. Lenahan Jr., 48 F.2d 110 (2 Cir., 1931); Ira S. Bushey & Sons, Inc. v. W. E. Hedger & Co. Inc., 40 F.2d 417 (2 Cir., 1930); Dailey v. Carroll, 248 F. 466 (2 Cir., 1917); Hahlo v. Benedict, 216 F. 303 (2 Cir., 1914); Gibson v. Manetto Co., 194 F. 331 (5 Cir., 1912); The Nat E. Sutton, 42 F.2d 229 (E.D. N.Y.1930); Moran Towing & Trans. Co. v. New York, 36 F.2d 417 (S.D.N.Y. 1929); The Daniel Burns, 52 F. 159 (S.D.N.Y.1892). There is some indication that peculiar conditions at New York required such a rule, Dailey v. Carroll, supra, but it has been adopted by the Third Circuit. The Doyle, 105 F.2d 113 (3 Cir., 1939).

What respondent argues for would be a vacuum-like application of these cases as a formula. Whether a particular charter is or is not a demise, must still depend upon the facts of the case. The terms of the charter and the actions of the parties to the charter are determinative. And the facts must be interpreted in light of the Supreme Court's direction that there is no demise unless the charterer has been given *control* of the vessel. United States v. Shea, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403 (1894); cf. Guzman v. Pichirilo, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1961). As stated quite clearly in Gilmore and Black, The Law of Admiralty, 216 (1957):

"The test is one of 'control'; if the owner retains control over the vessel, merely carrying the goods furnished or designated by the charter, the charter is not a demise; if the control of the vessel itself is surrendered to the charterer, so that the master is his man and the ship's people are his people, then we have to do with a demise." [citing, inter alia, United States v. Shea.]

The Doyle, supra, involved a fact situation materially different than that of the instant case. There the charter was to a towing company which undertook all navigation of the barge, using its own tugs to move it from place to place. The towing company had clearly taken over *complete control of the vessel* and was therefore correctly treated as the owner. The question of control was consequently not before the Court.

The evidence shows that the FELL LOVELAND was a barge without power, that S. C. Loveland Co. Inc. had the duty to tow it to Chester's dock, and that the master was responsible to Loveland for certain aspects of the loading. There is no evidence that Florence could control the master. Further, there is no evidence that Florence was ever responsible for or could control the navigation. Respondent had the burden of establishing the necessary control and it has not been sustained.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter of this cause and the parties.

2. The barge FELL LOVELAND sank on March 12, 1955 as the result of the negligence of respondent Chester.

3. The sinking of the FELL LOVELAND was not caused or contributed to by any negligence or fault on the part of libellant Florence.

4. Libellant is entitled to recover from respondent the sum of $6,931.57, the value of the cargo lost and additional freight expense incurred as the result of the sinking of the FELL LOVELAND, with interest from February 17, 1959 (the date of Judge Van Dusen's Findings) at the rate of 6% per annum and costs.