**In re SECURITY BARGE LINE, INC.**

**FLOWERS TRANSPORTATION, INC.**

**v.**

**Roger D. LEWIS, Linda Lewis, St. Jude & New Madrid Harbor Service, Hillman Barge & Construction Co., Cargill, Inc.**

**In re ST. JUDE and NEW MADRID HARBOR SERVICE INC.**

Nos. 84–2789A(6), 85–0886A(6).

United States District Court,
E.D. Missouri, E.D.

July 24, 1986.

---

Raymond L. Massey, Nicholas H. Ores, St. Louis, Mo., for Sec. Barge & Flowers Transp.

Daryl Sohn, St. Louis, Mo., for St. Jude & New Madrid Harbor Service.

John S. Sandberg, St. Louis, Mo., for Cargill.

Garry L. Lewis, Columbia, Mo., James R. Keller and Kenneth J. Mallin, St. Louis, Mo., for Roger and Linda Lewis.

F. Douglas O'Leary, St. Louis, Mo., for Hillman Barge & Const. Co.

## MEMORANDUM OPINION

GUNN, District Judge.

These consolidated cases arise out of an accident aboard a barge moored alongside a crane platform of a loading facility on the Mississippi River at New Madrid, Missouri. Roger Lewis, a longshoreman employed by the loading facility, Cargill, Inc., was injured when assisting fellow employees in stacking the steel covers of the barge and recovered compensation benefits from his employer under the Longshoremen's & Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950. Lewis and his wife then filed claims for damages in state court against Security Barge Lines and Flowers Transportation, the owner and charterer of the barge, and against St. Jude & New Madrid Harbor Service, the fleeting service which brought the barge to the loading facility.

These state court defendants thereupon filed petitions in this Court under 46 U.S.C. §§ 181–85 for exoneration from and/or limitation of liability for all damages arising out of the accident, pursuant to Rule F, Supplemental Rules, Fed.R.Civ.P. The state court action was accordingly enjoined and the Lewises filed claims for damages against the plaintiffs in these limitation proceedings. The Lewises also filed a third-party complaint against the following parties: The Valley Line, which was the dispatcher of the barge; Cargill, Inc., as owner of the barge and the crane platform; and the three above-identified limitation plaintiffs for negligence under § 905(b) of LHWCA; Hillman Barge and Construction Co., the manufacturer of the barge, for negligent design and/or manufacture; and

against Cargill, Inc. for damages arising out of Lewis' treatment on the job and eventual discharge after the accident. The Valley Line asserted exoneration and/or limitation as a defense to the third-party action. The entire matter was tried to the Court sitting in admiralty.[1]

After consideration of the testimony and exhibits introduced at trial, and the parties' briefs and post-trial material, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52, Fed.R.Civ.P.

### Findings of Fact

1. Barge VTC–138 was an inland river all-steel rake barge owned by defendant Security Barge Lines and chartered to defendant Flowers Transportation. Day-to-day dispatching and management of the barge at all times relevant to this case was handled by a Security/Flowers affiliate, defendant The Valley Line. The barge was manufactured in approximately 1968 by defendant Hillman Barge & Construction Co.

2. Barge VTC–138 was 195 feet long, 35 feet wide and 12 feet deep. As a raked barge, its design called for extra steel in the bow which caused it to ride approximately 3½ inches lower in the bow than in the stern. The barge was equipped with eight steel roll-top covers which could be spread out to cover the cargo hopper if needed, or stacked four at each end of the barge.

3. On September 16, 1983, a Valley Line employee inspected the barge when loaded and recorded on a barge condition report that the barge was taking in about three inches of water per day because of some small cracks in one of the wingtanks. This did not represent a significant damage.

4. On September 24, 1983, Barge VTC–138 arrived loaded with cargo at New Madrid, Missouri and was delivered to defendant St. Jude & New Madrid Harbor Service, a harbor tug and fleeting service, for fleet-

1. The Lewises waived a jury trial on the non-admiralty claims so that the entire matter could be considered together.

ing and off-loading purposes. St. Jude checked the barge and found no significant amounts of water in any of the compartments. On September 28, 1983 the barge was unloaded, washed and cleaned, and was again inspected on September 29, 1983. Again, no significant water was found. St. Jude left several of the covers in a partially open position after it was finished cleaning the barge, leaving a gap of 5–6 feet between the two center covers.

5. On September 30, 1983, St. Jude delivered the barge, as instructed by Valley, to a loading facility operated by defendant Cargill, Inc. Cargill possessed the required equipment to stack the steel covers and agreed to perform this service for Valley. St. Jude tied the barge alongside Cargill's floating dock. It is undisputed that Cargill was solely responsible for stacking the covers, a job Cargill had performed for Valley on previous occasions.

6. Roger Lewis was one of the four Cargill employees assigned to the stacking operation. Lewis had never before assisted in stacking steel roll-top covers.

7. The eight covers on the barge consisted of four pairs of covers, each pair of which was hooked together. Each cover had latch pins along the sides which when lowered into place would prevent the covers from rolling. The pair at each end of the barge could be stacked without taking the covers apart, but the other two pairs had to be disconnected by lifting one cover loose from the other with the crane before stacking.

8. When Cargill's employees boarded the barge, they, including Lewis, observed the gap between the center covers. It was not unusual for barges to have such gaps between covers when they arrived at Cargill's facility to have their covers stacked.

9. Cargill's employees began stacking the covers on Barge VTC–138 by first rolling the forward pair of covers, # 1 and # 2, to the bow end of the hopper, with cover # 2 resting on top of cover # 1. Roger Lewis and a co-employee then climbed up on top of cover # 3 and hooked crane cables to two of the four hooks at the stern end of that cover. The plan was for Car-

gill's crane operator to lift up the stern end of cover # 3 to separate it from cover # 4 so that those two covers could be stacked on top of covers # 1 and # 2.

10. In violation of Cargill's safety rules, Lewis and a co-employee both stood on cover # 4, which was still attached to cover # 3, while the crane operator prepared to lift cover # 3. Also in violation of Cargill's safety rules, they did not lower the latch pins on cover # 4 to prevent it from rolling. When the crane lifted cover # 3 and pulled it toward the bow end of the barge, cover # 3 caught on cover # 4 and pulled cover # 4 three to six feet forward toward the bow end of the barge, causing Lewis to fall backward off the stern end of cover # 4 into the empty cargo hopper below.

11. At the time of the accident the Barge VTC–138 was riding almost level in the water with the bow end no more than one foot lower than the stern end. This was a normal condition for such barges and did not pose any problem in the stacking procedure.

12. As a result of the fall Lewis sustained injuries which need not be described because of the Court's conclusions that the Lewises are not entitled to recovery in this action for these injuries.

13. An inspection of the barge on October 5, 1986 indicated that one of cover # 4's several latch pins was inoperable.

14. From the date of the accident on September 30, 1983, until May 2, 1984, Roger Lewis was on sick leave from his employment at Cargill. On May 2, 1984, he returned to work as a utility man on light duty.

15. Roger Lewis had no employment contract with Cargill and Cargill made no promises to him regarding the duration of his employment. In October 1984 Cargill laid Roger Lewis off because there was insufficient work he could perform to justify his position.

### Conclusions of Law
### Exoneration/Limitation actions

Plaintiffs Security, Flowers and St. Jude and third-party defendant Valley seek ex-

oneration from or limitation of liability under 46 U.S.C. § 183 for damages arising out of Roger Lewis' accident.

■ The burden of proof in an action seeking exoneration or limitation is divided: the initial burden is on the claimant to prove that negligence or unseaworthiness of the vessel was the proximate cause of the injury. Once this is proven the burden is upon the shipowner to demonstrate lack of knowledge and privity. *Farrell Lines, Inc. v. Jones,* 530 F.2d 7 (5th Cir.1976); *Baldassano v. Donald Larsen & Union Oil Co. of California,* 580 F.Supp. 415, 420 (D.C.Minn.1984).

■ In the present case the Court concludes that the evidence established that Roger Lewis' fall and consequent injuries were not caused by any negligence or unseaworthiness on the part of Barge VTC–138 and that plaintiffs in these actions, as well as third-party defendant Valley, are entitled to a decree of exoneration. The barge was not inordinately listing and the amount of water in the barge was insignificant and did not play any role in the accident. There was no evidence that the operable latch pins on cover # 4 were inadequate to secure the cover.

The Court concludes that the only causes of the casualty were the negligence of Lewis and his co-employees for not lowering the latch pins on those covers not in the process of being stacked, of Lewis for standing on top of an unsecured cover, and of Cargill's crane operator in lifting cover # 3 in such a way as to enable it to catch on or hit cover # 4. This was due to the fact that only two of the four crane cables were attached to cover # 4, to the poor placement of the crane boom or to the operator's failure to lift # 3 high enough, or to a combination of these factors.

*Claims under § 905(b) of LHWCA*

The Lewises seek recovery against Security, Flowers, Valley and St. Jude as vessel owners of Barge VTC–138 and against Cargill as the vessel owner of the crane platform, for negligence under § 905(b) of LHWCA which provides as follows:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title.... If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring servies to the vessel.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

■ Title 33 U.S.C. § 902(21) defines "vessel" as "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bear boat charterer, master, officer, or crew member." An owner "pro hac vice" for purposes of LSHWCA is one who assumes by charter or otherwise "exclusive possession, control, command and navigation of the vessel for specific period of time, has complete, though perhaps only temporary dominion over the vessel entrusted to him and commands her navigation and is entitled to avail himself fully of her services." *Guzman v. Pichirilo,* 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962); *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1041 n. 15 (5th Cir.1983).

■ All parties agree that *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1615, 68 L.Ed.2d 1 (1981), wherein the Supreme Court set forth the duty owed under § 905(b) by a shipowner to a longshoreman, is controlling in this case. Under § 905(b) the shipowner

must exercise ordinary care to have the ship and its equipment in such condition that the longshoreman can carry out his operations with reasonable safety and must warn of any hidden hazards that would not be obvious to the longshoreman. *Id.,* 101 S.Ct. at 1622. The shipowner may also be liable if he actively involves himself in the longshoreman's operations and negligently causes a longshoreman's injury. *Id.* However, "absent contract provision, law or custom to the contrary, ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations...." *Id.,* 101 S.Ct. at 1624–25. Once longshoring operations have begun, the shipowner can be held liable for injuries to a longshoreman resulting from an apparent dangerous condition which exists or develops only when the condition is known to the shipowner and the shipowner knows the longshoreman's employer will not or cannot remedy the unsafe condition. *Id.,* 101 S.Ct. at 1626.

■ A longshoreman's employer may be sued under § 905(b) if the employer is also the shipowner. However, such an action is barred where the injury is caused by the negligence of a co-employee engaged in the same operation. *Cavalier v. T. Smith & Son, Inc.,* 668 F.2d 861, 862–63 (5th Cir. 1982).

■ The Court first concludes that St. Jude was not a "vessel owner," as defined in 33 U.S.C. § 902(21), at the time of the accident. When the barge was secured to Cargill's dock, St. Jude's temporary dominion over the vessel ended. Furthermore, the Court concludes that St. Jude delivered the barge to Cargill in a safe condition. The gap between the middle covers was a common condition and not unsafe nor was it the cause of the accident. The barge was not inordinately listing when St. Jude relinquished control to Cargill, and there was no significant water in any of the compartments that contributed in any way to the accident. St. Jude had no reason for knowing the method Cargill's employees

would use to stack the covers or that they would be negligent in this operation.

■ The Court next concludes that Cargill's ownership of the floating crane vessel does not expose it to § 905(b) liability under the facts of this case. The Court concludes that the crane vessel and its equipment were in a condition to allow for the safe completion of the stacking operation. No negligence is attributable to the crane vessel itself. The only negligence attributable to Cargill is that of Roger Lewis' co-employees, including the crane operator, who were engaged in the stacking operation with Lewis. The language of § 905(b) immunizes Cargill from liability under that section based upon its employees' negligence under the facts of this case. *See Cavalier v. T. Smith & Son, Inc.,* 668 F.2d at 862–63 (longshoreman could not recover against employer where crane operator negligently let cargo fall on the plaintiff); *Bogan v. Barge T–13315B,* 607 F.Supp. 85, 87–88 (D.C.La.1985) (same).

■ Nor does § 905(b) liability attach to Cargill on the theory that it was owner *pro hac vice* of Barge VTC–138 at the time of the accident, or to Security, Flowers and Valley as owners or owners *pro hac vice* because Lewis' injuries were not caused by "negligence of the vessel." The barge, gear, and equipment—including the latch pins—to be used in the stacking operation were in a safe condition. Security, Flowers and Valley had no knowledge of any danger which may have developed during the stacking operation which Cargill would or could not remedy.

■ Having concluded that there was no "negligence of the vessel" as to Barge VTC–138, the Court need not consider Cargill's status as to the barge. The Court nevertheless concludes that Cargill did not have that degree of control over the barge to render it an owner *pro hac vice* of the barge and that Cargill's liability for the work-related injuries sustained by Lewis as a result of his own negligence and that of his co-employees consists exclusively of the prescribed LHWCA compensation. *See,*

*e.g., Ducote v. International Operating Co. of LA, Inc.,* 678 F.2d 543 (5th Cir.1982) (cargo loading company was not owner *pro hac vice* of vessel upon which its employee was injured while performing cleaning duties).

Accordingly, judgment is entered in favor of St. Jude, Cargill, Security Barge, Flowers Transportation and Valley Line and against the Lewises on the third-party complaint.

*Negligent design and/or manufacture*

There was no credible evidence at trial that Barge VTC–138 was not properly designed or manufactured. Judgment is accordingly entered in favor of Hillman Barge & Construction Co.

*Employment related claims against Cargill, Inc.*

Roger Lewis seeks recovery for breach by Cargill of an oral contract for life-time employment. The Court concludes that there was no credible evidence at trial that Lewis had a contract or any agreement for life-time employment. Cargill terminated Lewis' employment when it became clear to Cargill that he could not perform the tasks required, and in doing so Cargill did not breach an employment contract.

Lewis also seeks damages against Cargill under the prima facie tort doctrine based upon allegedly tortious conduct in an attempt to force him to voluntarily quit after his injury. The elements of prima facie tort as recognized in Missouri are set forth in *Porter v. Crawford & Co.,* 611 S.W.2d 265 (Mo.Ct.App.1980), as follows: 1) an intentional lawful act by the defendant; 2) an intent to cause injury to the plaintiff; 3) injury to the plaintiff; and 4) an absence of any justification or an insufficient justification for the defendant's act. *See also Bandag of Springfield v. Bandag, Inc.,* 662 S.W.2d 546, 552 (Mo.Ct.App. 1983). The Court concludes that there was insufficient credible evidence of any wrongful intent on the part of Cargill in its treatment of Lewis following his accident or of any unjustified actions on Cargill's part.

Finally, the Court concludes that the Lewis claim against Cargill for retaliatory discharge under the Missouri Workers' Compensation Act, Mo.Ann.Stat. § 287.780 (Vernon Supp.1985), fails for lack of any evidence that Lewis exercised any rights he may have had under the state workers' compensation law.

Accordingly, judgment is entered in favor of Cargill on all the state law claims against it.

