In the Matter of the Complaint of AN-HEUSER–BUSCH, INC., for Exoneration from or Limitation of Liability Re M/V DONZI Z 33 CROSSBOW HIN # DMRZEO98E787, FL Reg. # FL8877EK.

No. 89–1835–CIV.

United States District Court, S.D. Florida.

July 20, 1990.

Ronald Fitzgerald and Robert L. Spector, Ft. Lauderdale, Fla., for claimants.

Jonathin Fordin, Miami Beach, Fla., for defendants.

MEMORANDUM OPINION

SCOTT, District Judge.

This Cause is before the Court upon the parties' cross-motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The petitioner, Anheuser–Busch Incorporated ("ANHEUSER–BUSCH"), has instituted this action pursuant to the Limitation of Liability Act. 46 U.S.C.App. 181–188 (1958) (originally enacted as Act of Mar. 3, 1851 ch. 43, sec. 3, 9 stat. 635). In essence, Anheuser–Busch claims that this Act entitles it to a limitation of liability for the damages arising from a July 26, 1987 boat-

ing accident. The claimants, Stephen and Linda Barrett, allege that Anheuser–Busch is not a charterer within the meaning of 46 U.S.C.App. 186 and therefore is not entitled to a limitation of its liability. Having carefully reviewed the record and applicable legal authority, this Court now makes the following rulings.

## I. LEGAL STANDARD

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406 (5th Cir.1980). This burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *De Cuellar v. Brady*, 881 F.2d 1561 (11th Cir.1989); *United of Omaha Life Ins. v. Sun Life Ins. Co.*, 894 F.2d 1555 (11th Cir.1990).

## II. FACTUAL BACKGROUND

On July 26, 1987, Sean Barrett, a minor child, died as a result of a boating accident which occurred on the Intracoastal Waterway in Broward County. The accident occurred in the vicinity between the Dania Beach Boulevard Bridge and the Dania cutoff canal. At the time of the accident Sean Barrett was a passenger aboard a vessel owned by his father ("BARRETT VESSEL"). Also present in the Intracoastal Waterway at that time was a Donzi manufactured vessel operated by John Huard ("DONZI VESSEL").[1] It is alleged that the wake produced by the Donzi vessel caused the Barrett vessel to capsize. As a result, Sean Barrett drowned.

Following this tragic incident, Stephen and Linda Barrett, the parents of Sean Barrett, and the duly appointed personal representatives of his estate filed a wrongful death action in the Broward County Circuit Court (Case no. 88–06829–CP). Although initially not a party to this wrongful death action, the complaint was amended to include Anheuser–Busch as a defendant.[2] It is alleged, *inter alia*, that Anheuser–Busch entered into a joint venture with the Guy Gannett Publishing Company, in order to procure a vessel for conducting promotional activity. Specifically, the vessel was intended to be used for the joint purpose of promoting Anheuser–Busch's product, "Bud Lite" beer, and Guy Gannett Publishing Company's radio station, "Zeta 4" ("ZETA 4"). After being joined as a party, Anheuser–Busch filed the instant action seeking a limitation of liability.

In support thereof, Anheuser–Busch contends that at the time of the accident it was a bareboat charterer of the Donzi vessel, without sufficient privity or knowledge of the alleged errors in navigation. Therefore, it claims the benefits afforded under the Limitation of Liability Act. 46 U.S.C.

---

**1.** THE VESSELS

(A) The Barrett vessel is a 23′ "home made" vessel with Wellcraft decals attached. This vessel was purchased from the United States Government as confiscated property. The vessel was rebuilt and restored by Ron Weins who subsequently sold the vessel to the claimants. This vessel had a hull identification number of FLZF9837K585 and a registration number of FL7165EW.

(B) The Donzi vessel is a 32′4″ Donzi Z 33 Crossbow with the decal "Bud–Lite–Zeta" attached. The vessel had a hull identification number of DMRZE098E787 and a registration number of FL8877ED.

**2.** The other defendants named in the third amended complaint are Roscioli Yachting Center Incorporated; Guy Gannett Publishing Company, d/b/a "Zeta 4"; and John J. Huard. Roscioli Yachting Center was the boat dealership which leased the Donzi vessel to Guy Gannett Publishing Company. At the time Guy Gannett Publishing was a local radio station which acquired this vessel for utilization in its promotional activity. It is alleged that on the day of the fatal accident, John J. Huard, an employee of Roscioli Yachting Center, operated the Donzi vessel in a negligent manner so as to cause the Barrett vessel to capsize.

App. 181 *et seq.* The claimants have countered by alleging that Anheuser–Busch has failed to make a sufficient showing to invoke the protection of this statute.

### III. LEGAL ANALYSIS

This case involves the application of the Limitation of Liability Act. 46 U.S.C.App. 181 *et seq.* Specifically, it involves application of sections 46 U.S.C.App. 183 and 186.[3] Generally, if applicable, these statutory provisions allow a bareboat charterer to limit its liability for damages arising from an accident involving a demised vessel.

In order to prevail on its motion for summary judgment, Anheuser–Busch must satisfy two requirements. First, as a threshold, Anheuser–Busch must establish that it is a bareboat charterer within the meaning of 46 U.S.C.App. 186. If successful, Anheuser–Busch must then establish that it was without sufficient privity or knowledge of the navigational errors made while the Donzi vessel was at sea on the afternoon of July 26, 1987. Should Anheuser–Busch fail to establish either of these requirements, summary judgment in its favor would be inappropriate.

### (A) A CHARTER PARTY UNDER 46 U.S.C.App. 186

Before addressing the merits of 46 U.S.C.App. 186, a brief description of the theory and purpose behind the Limitation of Liability Act is necessary. 46 U.S.C.App. 183 *et seq.* This Act was enacted over a century ago in order to promote the employment of American vessels in seaborne commerce. *American Car. & Foundry Co. v. Brassert,* 289 U.S. 261, 53 S.Ct. 618, 77 L.Ed. 1162 (1933); *Complaint of B.F.T. No. Two Corp.,* 433 F.Supp. 854 (E.D.Pa. 1977). However, due to the extraordinary hazards associated with this mode of transportation, Congress felt that this objective could only be achieved by assuring that the maritime entrepreneur's risks would not exceed the amount of his capital investment. *Flink v. Paladini,* 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613 (1929); *See, Note,* "Shipowner's Limitation of Liability" 3 *Colum.J.L. & Soc. Probs.* 105 (1967). Thus, to promote America's burgeoning shipping industry Congress enacted the Limitation of Liability Act. 46 U.S.C.App. 181 *et seq.* In essence, this Act serves to limit the extent of a vessel owner or charterer's liability to the value of the vessel and her freight. 46 U.S.C.App. 183.

In order to properly address the issues presented, a general understanding of the charter concept is necessary. Under general maritime principles, there are three types of charter parties: (1) a voyage charter; (2) a time charter; and (3) a demise or bareboat charter ("BAREBOAT CHARTER").[4] Of the three classifications, only a bareboat charter is entitled to an exclusion or limitation of its liability under 46 U.S.C. App. 186. *Guzman v. Pichirilo,* 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962); *Bishop v. United States,* 476 F.2d 977 (5th Cir.), cert. denied, 414 U.S. 911, 94 S.Ct.

---

**3.** These statutory provisions provide in pertinent part as follows:

*46 U.S.C.App. 183: Amount of Liability; loss of life or bodily injury; privity imputed to owner; "seagoing vessel":*

(a) The liability of the owner of any vessel, whether American or foreign, .......... for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not .......... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

*46 U.S.C.App. 186: Charterer may be deemed owner:*

The charterer of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, or by his own procurement, shall be deemed the owner of such vessel within the meaning of the provisions of this chapter relating to the limitation of the liability of the owners of vessels; and such vessel, when so chartered, shall be liable in the same manner as if navigated by the owner thereof.

**4.** In a *voyage charter* the vessel is engaged to carry a full cargo on a single voyage. The owner retains complete control over the vessel. In a *time charter* the vessel's carrying capacity is taken by the charterer for a fixed time for as many voyages as possible during the charter period. Again, the owner retains all control over management and navigation. In a *demise or bareboat charter,* the charterer takes over complete control over the vessel and becomes the owner pro hac vice. The charterer thus assumes control over the vessel's management and navigation. *See generally,* G. Gilmore and C. Black, *The Law of Admiralty,* pp. 193–94 (2d ed. 1975).

234, 38 L.Ed.2d 149 (1973). To create a bareboat charter the owner of a vessel must completely relinquish possession, command and navigation thereof to the charterer. *Guzman v. Pichirilo*, 369 U.S. at 699, 82 S.Ct. at 1096, 8 L.Ed.2d at 207, citing *United States v. Shea*, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403 (1894); *Irby v. Tokai Lines*, No. 88–6890, 1990 WL 18880 (E.D.Pa.1990) (available on Lexis February 23, 1990). *Cenac Towing Co. v. Terra Resources*, 734 F.2d 251 (5th Cir.1984); *Gaspard v. Diamond M. Drilling Co.*, 593 F.2d 605 (5th Cir.1979). Anything short of a relinquishment of total control is considered a voyage or a time charter. *Interocean Shipping Co. v. M/V Lygaria*, 512 F.Supp. 960 (D.Md.1981). The issue before this Court is whether Anheuser–Busch's relationship to the disputed vessel is such that it can take advantage of the statutory limitation of liability.

■ A party claiming the status of a bareboat charterer under 46 U.S.C.App. 186 must satisfy two requirements. First, as a condition precedent, it must establish that it was in fact a charterer of the vessel in question. Next, it must establish that it manned, victualed, and navigated such vessel. 46 U.S.C.App. 186; *Jones & Laughlin Steel Corporation v. Vang*, 73 F.2d 88 (3rd Cir.1934); *The Severance*, 152 F.2d 916 (4th Cir.1945). Anheuser–Busch has failed to satisfy either of these requirements.

Anheuser–Busch, desiring to engage in an advertising campaign with a local South Florida radio station, entered an agreement with Zeta 4. As part of this agreement, the parties undertook a particular promotional strategy requiring the use of a high performance vessel. In essence, this vessel was used to travel the Intracoastal Waterway making scheduled appearances at various restaurants. Once at the restaurant, the crew aboard the vessel would distribute Anheuser–Busch and Zeta 4 promotional gifts to the patrons.

As a condition of this agreement, it was decided that Zeta 4 would have absolute responsibility for obtaining the vessel. This condition was clearly reflected in the testimony of Charles Cindric, a corporate representative of Anheuser–Busch. In pertinent part, he testified at deposition to the following:

*Mr. Fitzgerald:* When you talked to her [Claire Belletti],[5] what was discussed as to what the arrangement would be?

*Mr. Cindric:* It was our understanding from Zeta and other radio stations that Coors had purchased the boat outright and provided it to the station. We [Anheuser–Busch] did not wish to do that, and instead asked the radio station to get a boat *on their own* that we could get involved with from an advertising standpoint. (emphasis supplied).

*Mr. Fitzgerald:* And that is in your discussion with Claire and when you said you didn't want to buy a boat, you wanted them to go lease it or buy it?

*Mr. Cindric:* Right.

*Mr. Fitzgerald:* I take it then.... it was agreeable to Zeta 4 that they would obtain a boat to be used for this program.

*Mr. Cindric:* Yes.

Deposition of Charles Cindric, p. 12, Line 4–16; p. 13, Line 10–14.

In return for Zeta 4's procurement of the vessel, Anheuser–Busch agreed to contribute twelve thousand ($12,000.00) dollars to assist in financing the promotion.[6] Further, Anheuser–Busch agreed to contribute additional money to defer the cost of fuel should this expenditure become too high. Although Anheuser–Busch's cash contribution may have been used, among other things, to hire a crew and maintain the vessel, such expenditure is insufficient to establish a bareboat charter of the Donzi vessel. This Court finds that rather than occupying the position of a bareboat charterer, Anheuser–Busch was merely a co-participant in an advertising scheme with Zeta 4.

The actual charter agreement involved Zeta 4 and Roscioli Yacht Center. On June

---

5. Claire Belletti, a representative of Zeta 4, was instrumental in arranging the advertising agreement between Anheuser–Busch and her radio station.

6. The total cost of this promotion was approximately fourteen thousand eight hundred and ninety ($14,890.00) dollars, plus gas.

18, 1987, these two entities entered into a written agreement regarding leasing the Donzi vessel in question. The following salient facts pertaining to this agreement are not in dispute: (1) The only two parties named to the agreement are Zeta 4 and Roscioli Yacht Center; (2) No mention was made in the agreement of Anheuser–Busch being a charterer of the vessel. In fact, to the contrary, the agreement consistently refers to Zeta 4 as being the charterer of the vessel.[7] This agreement is entirely consistent with Mr. Cindric's testimony that Zeta 4 was responsible for leasing the vessel.

The element so glaringly absent from Anheuser–Busch's argument concerns actual possession of the Donzi vessel. As stated previously, a bareboat charterer arises only when the vessel owner surrenders complete possession and control of the vessel to the charterer. *Gaspard v. Diamond M. Drilling Co.*, 593 F.2d at 606. Such complete control was certainly not surrendered to Anheuser–Busch. To the contrary the testimony of Anheuser–Busch's corporate representative, Mr. Cindric, indicates that possession and operation responsibilities rested with Zeta 4. Deposition of Charles Cindric, p. 15, Line 13–25; p. 16, Line 1–2. As a result, pursuant to the clear intent and spirit of 46 U.S.C.App. 186, Anheuser–Busch fails to qualify for any limitation of liability thereunder. In fact, based upon those circumstances upon which there is no dispute, it is clear that Anheuser–Busch cannot establish an entitlement to any limitation of liability. As a result, judgment as a matter of law is now appropriate.

### (B) LACK OF PRIVITY OR KNOWLEDGE

Since the Court concludes that Anheuser–Busch has not met the threshold burden of establishing it was a charterer within the meaning of 46 U.S.C.App. 186, there is no need to address the privity or state of knowledge maintained by Anheuser–Busch with regard to the activity aboard the Donzi vessel on July 26, 1987.

---

**7.** Although a charter agreement may arise pursuant to oral negotiations or be implied from the existing circumstances, Anheuser–Busch has completely failed in its attempt to establish the existence of such negotiations or circumstances.

## IV. CONCLUSION

Based upon the foregoing analysis, this Court concludes that like the Ancient Mariner, Anheuser–Busch must wear as its albatross any legal liability which may attach to the Donzi vessel. Accordingly, it is ORDERED and ADJUDGED as follows:

(1) The petitioner, Anheuser–Busch's, motion for summary judgment is DENIED.

(2) The claimants, Stephen and Linda Barretts', motion for summary judgment is GRANTED.

(3) Within five (5) calendar days from entry of this Order, the Claimants shall submit a final judgment consistent with this Memorandum Opinion.

DONE and ORDERED.