[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12953
_____

D.C. Docket No. 1:11-cv-23841-RLR


SEABOARD SPIRIT LTD,
As Owner and Seaboard Marine LTD. as Owner
Pro Hac Vice of the M/V Seaboard Spirit,
its engines, tackle, appurtenances, equipments, etc.
in a cause of Exoneration from or Limitation of Liability,
SEABOARD SHIP MANAGEMENT, INC.,

Plaintiffs-Appellants
Cross Appellees,

SEABOARD MARINE OF FLORIDA, INC.,

Plaintiff,

versus

ANTWON HYMAN,
SIESHIA REID,

Claimants-Appellees
Cross Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 5, 2016)

Before HULL, MARTIN, and BALDOCK,[*] Circuit Judges.

MARTIN, Circuit Judge:

This case arises from a fatal accident aboard a cargo ship called the M/V

Seaboard Spirit. Ossie Hyman was a 47-year-old longshoreman who worked for a

stevedore, which is a company that employs longshoremen to load and unload

ships. Mr. Hyman was helping to unload the Seaboard Spirit when a shipping

container slid sideways. Tragically, the container crushed Mr. Hyman to death.

The owners of the Seaboard Spirit brought an action seeking exoneration from

liability arising out of this accident. On the other hand, the personal

representatives of Mr. Hyman's estate filed a negligence claim against the owners

of the Seaboard Spirit under the Longshoremen and Harbor Worker's

Compensation Act ("LHWCA").

The issue on appeal concerns the owners' liability under the LHWCA. We

must decide whether the District Court correctly limited the effect of its judgment

to allow Mr. Hyman's personal representatives to bring a new set of negligence

_____

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of
Appeals, sitting by designation.

2

claims against the ship owners.  After careful consideration, and with the benefit of oral argument, we conclude that the District Court erred in holding that its ruling had no effect on the ship owners' liability as a stevedore.

## I.  BACKGROUND AND PROCEDURAL HISTORY

A. SEABOARD SPIRIT IS LOADED

The Seaboard Spirit is a "roll-on/roll-off" vessel.  This means that it carries cargo containers secured on wheeled chassis that facilitate loading and unloading. On May 3, 2011, the Seaboard Spirit was loaded in Nassau, Bahamas for a voyage to Miami, Florida.  A third-party stevedore brought the cargo aboard in Nassau. But once the cargo was aboard, the Seaboard Spirit's crew secured it.

The relevant piece of cargo in this case is a blue eight-by-twenty foot container-and-chassis combination (similar to what a tractor-trailer tows).  This "trailer," as it's known in the industry, was secured on an internal ramp connecting two parts of the ship.  It was held in place by lashing chains and a "mule" (a tractor used to move the trailer).  One of the lashing chains may have been too tight.

B. THE ACCIDENT

On May 4, 2011, the Seaboard Spirit arrived in the Port of Miami, and a stevedoring company, Eller-ITO, took over unloading operations.  Mr. Hyman was a longshoreman employed by Eller-ITO.  When Eller-ITO's longshoremen were attempting to remove the blue trailer from the internal ramp, Mr. Hyman was

3

acting as a "striker." This means that he was in charge of safety, and his responsibilities included checking the cargo, ensuring that all securing gear had been removed, and telling the mule driver when to drive.

Mr. Hyman walked up the ramp next to the trailer and entered a "pinch point," which is a space between a fixed object (in this case, the bulkhead, which is the wall of the ship) and a moving object (here, the trailer). Several witnesses said Mr. Hyman didn't need to enter that pinch point and disagreed with his decision to do so. When he entered the pinch point, the tight lashing chain was still attached to the trailer. Mr. Hyman removed the wheel chocks and then gave a hand signal to the mule driver that the driver interpreted as an "okay" to drive. Two witnesses also testified that Mr. Hyman verbally told the mule driver to drive.

Because the trailer was still lashed down when the mule drove forward, it shifted to its side and pinned Mr. Hyman against the bulkhead. Mr. Hyman was crushed to death.

C. THE CURRENT CASE

After the accident, the owners of the Seaboard Spirit—Seaboard Spirit Ltd., Seaboard Marine Ltd., and Seaboard Ship Management, Inc. (collectively, "Seaboard")—filed a petition under the Limitation of Liability Act, 46 U.S.C. § 30501 et seq., asking for exoneration from or limitation of liability. They argued that they were not at fault for Mr. Hyman's death. The personal representatives of

4

Mr. Hyman's estate—Antwon Hyman and Sieshia Neshay Reid (collectively, "the Claimants")—responded by arguing against exoneration and bringing claims against Seaboard under § 905(b) and § 933 of the LHWCA.  33 U.S.C. §§ 905(b), 933.  Specifically, the Claimants alleged that Seaboard breached the three duties that § 905(b) imposes on vessel owners.

The parties both filed motions for summary judgment.  In Claimants' motion, they argued for the first time that Seaboard was subject to duties beyond the three § 905(b) duties that apply to vessel owners.  They asserted that because the Seaboard Spirit's crew secured cargo in the Bahamas, Seaboard also acted as, and assumed the duties of, an onloading stevedore.  The District Court granted Seaboard's motion and denied the Claimants' motion.  In doing so, the District Court rejected the Claimants' argument that Seaboard had duties beyond the three owner-specific duties imposed by § 905(b) and concluded that Seaboard had not breached any of those three duties as a matter of law.

The Claimants then filed a Rule 59(e) motion to alter or amend the summary judgment order, arguing again that Seaboard should be subject to more than the three owner-specific § 905(b) duties.  The court reversed its earlier position and accepted this argument in a May 8, 2014 order partially granting the Claimants' Rule 59(e) motion.  It found that Seaboard "acted as both onloading stevedore and the vessel owner," and held that Seaboard should not be allowed to escape liability

for its actions as an onloading stevedore merely because of its status as vessel owner.  It noted that stevedores are best-situated to prevent injuries.  The District Court then held that the Limitation of Liability Act could limit Seaboard's liability for its actions as vessel owner only, so "any ruling" in this case "does not limit any causes of action that Claimants may bring against [Seaboard] in their roles as onloading stevedores."  It also allowed one of the Claimants' three § 905(b) claims to go to trial.

After a three-day bench trial, the District Court ruled against the Claimants on their only § 905(b) claim.  The court rejected each of the Claimants' theories of liability, finding, as fact, that none of Seaboard's challenged actions—stowing the chassis on the ramp, over-tightening the lashing chain, and failing to use wheel chocks—proximately caused Mr. Hyman's death.  Instead, the court found that "the proximate cause of Mr. Hyman's death was . . . . Mr. Hyman's decision to position himself in the pinch point when giving [the mule driver] the order to move forward—a decision which even his fellow longshoremen found inexplicable."  Alternatively, the court found that if Mr. Hyman didn't tell the mule driver to move forward, then "it was some miscommunication between [the mule driver] and Mr. Hyman, coupled with Mr. Hyman's position in the pinch point, that caused Mr. Hyman's death."  But the District Court also reiterated its prior holding that its ruling did not limit any future causes of action brought against Seaboard in its role

6

as onloading stevedore. The District Court entered final judgment against the Claimants on June 8, 2015. Both parties appealed.

## II. STANDARDS OF REVIEW

We review the district court's findings of fact after a bench trial in a maritime case for clear error, and we review its conclusions of law de novo. Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc., 565 F.3d 1293, 1298 (11th Cir. 2009).

## III.    DISCUSSION

A. JURISDICTIONAL ISSUE

Seaboard challenges the District Court's ruling that its resolution of this case did not limit any causes of action that the Claimants may bring against Seaboard in its role as onloading stevedore. The Claimants argue that we lack jurisdiction over this issue because Seaboard did not file its notice of appeal in time. A party must file a notice of appeal within thirty days after the District Court enters the judgment or order from which the party wants to appeal. Fed. R. App. P. 4(a)(1)(A). The Claimants say that Seaboard did not file its notice of appeal until over one year after the District Court first ruled in its May 8, 2014 order.

Contrary to the Claimants' argument, Seaboard timely filed its notice of appeal because the District Court's May 8, 2014 order was not a final judgment. A trial court's order is appealable "only if it is final or otherwise permitted by the

7

Federal Rules of Civil Procedure." Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1356 (11th Cir. 1994). "A judgment is final if it disposes of all of the claims with regard to all of the parties." Id. The May 8, 2014 order was not a final judgment—it did not resolve all claims against Seaboard. Rather, the order allowed one of those claims to go to trial. The District Court did not enter a final judgment resolving all claims against all parties until June 8, 2015, and Seaboard filed its notice of appeal twenty-three days later, on July 1, 2015. Because Seaboard filed its notice of appeal within thirty days of the final judgment, we have jurisdiction to hear their arguments on appeal.

The Claimants assert that 28 U.S.C. § 1292(a)(3) required Seaboard to file an interlocutory appeal of the District Court's May 8, 2014 order, even though it wasn't a final judgment. To the contrary, § 1292(a)(3) permits, but does not require, interlocutory appeals in maritime cases when the court "determin[es] the rights and liabilities of the parties." Even assuming that the May 8, 2014 order was such a determination, Seaboard was at liberty under § 1292(a)(3) to wait until a final judgment to appeal. See Caradelis v. Refineria Panama, S.A., 384 F.2d 589, 591 n.1 (5th Cir. 1967) (explaining that a party that declined to appeal an

8

interlocutory order can still appeal the final determination of the case because "[a]n interlocutory appeal [under § 1292(a)(3)] is permissive rather than mandatory").[1]

## B. CLAIMS AGAINST SEABOARD AS STEVEDORE

Even though the District Court ruled in favor of Seaboard as an owner, it explicitly left open the possibility for Claimants to bring a separate set of general maritime law negligence claims against Seaboard as an onloading stevedore under 33 U.S.C. § 933. Seaboard argues that the District Court was wrong to limit the effect of its judgment in this way. For their part, the Claimants argue that the District Court correctly limited the scope of its ruling, but should not have made any sort of finding as to whether Mr. Hyman was the proximate cause of his own death.[2] The parties' arguments highlight the tension between the District Court's proximate cause finding and its ruling that the Claimants may still pursue a negligence action against Seaboard in its role as a stevedore. It is hard to imagine what kind of negligence case the Claimants could bring if Mr. Hyman was the proximate cause of the accident.

We are aware that the parties dispute the threshold issue of whether Seaboard acted as an onloading stevedore by having the Seaboard Spirit's crew

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

[2] To be clear, the Claimants do not critique the analysis the District Court used in arriving at this ruling. Rather, their argument is that the District Court simply should not have reached the issue.

secure the cargo in the Bahamas.  But we need not decide that issue here.  Even assuming Seaboard acted as both onloading stevedore and vessel owner, we conclude that the District Court erred in holding that the Claimants could sue Seaboard under both § 905(b) and § 933.  These Claimants are limited to suing Seaboard under § 905(b).

We rely on precedent interpreting the LHWCA, and we discuss that precedent here.  Because Seaboard prevails on its legal argument, the Claimants' request that we reverse the District Court for reaching the issue of the proximate cause of Mr. Hyman's death becomes irrelevant.  Our ruling (either way) on that issue will not impact the outcome of this appeal, so we choose not to rule on it.

1. Background on the LHWCA

The LHWCA establishes a federal workers' compensation program for longshoremen and their families.  See Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 96, 114 S. Ct. 2057, 2062 (1994).  When a longshoreman sustains an injury, the "longshoreman's employer—in most instances, an independent stevedore—must pay the statutory benefits regardless of fault, but is shielded from any further liability to the longshoreman."  Id. (citing 33 U.S.C. §§ 904, 905(a)) (citation omitted).

In addition to receiving statutory compensation from his or her employer, an injured longshoreman can seek damages from a third-party vessel owner under

10

§ 905(b)[3] of the LHWCA if that vessel owner negligently caused the injuries.  See id. at 96–97, 114 S. Ct. at 2062.  This provision was enacted in 1972 to limit a longshoreman's right to sue a shipowner and shift more responsibility for compensating an injured longshoreman to "the party best able to prevent injuries: the stevedore-employer."  Id. at 97, 114 S. Ct. at 2063.  So as it stands today, the LHWCA holds an injured longshoreman's stevedore-employer strictly liable for a capped amount of workers' compensation benefits, while it holds a vessel owner liable only for injuries caused by that owner's own negligence.

The Supreme Court has interpreted § 905(b) to impose three separate duties on the vessel owner.  See Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 166–68, 101 S. Ct. 1614, 1622–23 (1981).  The first, called the "turnover duty," "relates to the condition of the ship upon the commencement of stevedoring operations."  Howlett, 512 U.S. at 98, 114 S. Ct. at 2063.  The second, called the "active-control duty," "provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of

_____

[3] Section 905(b) provides, in relevant part, that:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . .  If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . .  The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C. § 905(b).

11

the vessel.'" Id. (quoting Scindia, 451 U.S. at 167, 101 S. Ct. at 1622). The third, called the "duty to intervene," "concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore." Id.

When it comes to suing vessel owners for negligence, "the LHWCA expressly pre-empts all other claims, but it expressly preserves all claims against [non-owner] third parties." Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 818–19, 121 S. Ct. 1927, 1932 (2001) (citations omitted); see also 33 U.S.C. § 905(b) ("The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.").

### 2. Crew Members Acting as Longshoremen

Seaboard argues that because § 905(b), by its own terms, provides the exclusive means of relief against vessel owners, the District Court can't properly preserve general maritime law claims against Seaboard under § 933. The Claimants counter that § 905(b) does not limit the claims that a longshoreman may bring against a vessel owner who acts as a stevedore. Claimants say this type of claim is allowed by § 933.

We recognize that vessel owners can act as stevedores by having their crews handle tasks typically done by longshoremen. We will assume here that Seaboard acted as a stevedore in this way. Even making that assumption, however, we know

12

of no case that allows a vessel owner to be sued under both § 905(b), as a vessel owner, and § 933, as a stevedore.  Instead, when crew members have negligently mishandled tasks normally performed by longshoremen, and that negligence causes injury to other longshoremen, courts have held the vessel owners to the heightened standard of care of a stevedore.  But they have done so within the longshoremen's § 905(b) actions against the owners.

For example, in Ollestad v. Greenville S.S. Corp., 738 F.2d 1049 (9th Cir. 1984), the Ninth Circuit considered a § 905(b) "turnover duty" claim against a third-party vessel owner.  See id. at 1050–51.  The owner's crew had moved equipment around on the ship before turning it over to the stevedore, and this was a "job normally performed by longshoremen."  Id. at 1050.  Later, the plaintiff tripped over the equipment and sustained injuries.  Id.  On appeal, the court reasoned that the owner should be held to the same standard of care as a stevedore, even in the § 905(b) action, because the crew performed "work normally done by longshoremen."  Id. at 1052.

The Second Circuit addressed a similar circumstance in Fanetti v. Hellenic Lines Ltd., 678 F.2d 424 (2d Cir. 1982).  Like in Ollestad, the shipowner in Fanetti "acted as its own stevedore."  Id. at 426.  The Fanetti panel explained that although a shipowner is free to act as its own stevedore in order to save money, the extra cost of hiring an independent stevedore carries with it the benefit of protection

13

from liability for damages arising out of negligent stevedoring conduct.  Id. at 428.

Thus, a shipowner who refuses to hire an independent stevedore "cannot save the

premium and still claim the protection."  Id.  On that basis, the panel decided that

the shipowner was not entitled to a jury instruction holding it to the lower standard

of care of a shipowner.  Id. at 428–30.

The Claimants here rely on Ollestad and Fanetti to support the District

Court's decision leaving them free to bring another action against Seaboard.

However, these two cases do not stand for the proposition that Seaboard, though

victorious in the § 905(b) action, can now be subject to a new § 933 action as a

stevedore.  Instead, Ollestad and Fanetti tell us that Seaboard should have been

held to the higher standard of a stevedore in the § 905(b) action.[4]

Because there is no precedent for subjecting a vessel owner to separate and

independent liability under both § 905(b) and § 933, we decline to do so here.

While there is case law suggesting that Seaboard should have been held to a

stevedore's standard of care in the § 905(b) action below, the Claimants do not

---

[4] The Claimants also argue that when a vessel owner acts as its own stevedore, the owner is in the best position to prevent injuries arising from stevedoring operations and should therefore bear the risk of those injuries.  The Second Circuit took a similar stance in Fanetti, reasoning that shipowners who direct their non-expert crew members to perform stevedoring tasks should not be shielded from liability for damages arising out of their negligent stevedoring conduct.  See 678 F.2d at 428.  However, the Second Circuit's solution was not to subject the shipowner to liability under both § 905(b) and § 933.  Instead, the Fanetti panel chose to hold the shipowner to the higher standard of care of a stevedore in the longshoreman's § 905(b) action against the shipowner.  Thus, we take the Claimants' argument that Seaboard was in the best position to prevent the injuries arising from their stevedoring activities as additional support for the proposition that Seaboard should have been held to a stevedore's standard of care in the § 905(b) action.  Again however, the Claimants did not raise this argument in this way.

14

argue here that the District Court should be reversed for applying the wrong standard of care to their § 905(b) claims. Claimants have therefore abandoned that argument. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (stating that issues not briefed are deemed abandoned).

3. Dual-Capacity Employment

In concluding that Seaboard could be subject to liability under both § 905(b), as an owner, and § 933, as a stevedore, the District Court relied on so-called dual-capacity employment cases. The Claimants also rely on these cases on appeal. In each of these dual-capacity employment cases, the injured longshoreman suing the vessel owner was employed not by a third-party stevedore, but directly by the vessel owner. See, e.g., Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 528, 103 S. Ct. 2541, 2546 (1983).

The dual-capacity employment cases provide a narrow solution to a specific problem that comes up when a vessel owner directly employs longshoremen. As we've explained, the LHWCA's compensation scheme envisions a regime in which an injured longshoreman's stevedore-employer is strictly liable for workers' compensation benefits, while the vessel owner is liable only for injuries caused by the owner's negligence. See id. at 528–30, 103 S. Ct. at 2546–47. But when a vessel owner directly employs longshoremen, the vessel owner and the stevedore-employer are the same entity. In this circumstance, the LHWCA does not clearly

15

address what longshoremen should recover from their employers when accidents occur. To prevent longshoremen from getting shortchanged simply because they're employed by a vessel owner and not by a third-party stevedore, the Supreme Court interprets the LHWCA to provide that longshoremen who are employed by vessel owners retain their full statutory rights to both workers' compensation benefits and, if proven, negligence liability. See id. at 528–32, 103 S. Ct. at 2546–48. Thus, an injured longshoreman may recover from a vessel owner both as an owner (for negligence) and as a stevedore-employer (for workers' compensation). See id.; Gravatt v. City of New York, 226 F.3d 108, 120 (2d Cir. 2000) ("Insofar as the employer-vessel is negligent in its stevedore-employer capacity, it is immune from suit under section 905(a). However, insofar as it is negligent in its vessel capacity, it will be liable under section 905(b) in the same manner as a third party.").

But this case is not a dual-capacity employment case. Mr. Hyman was employed by a third-party stevedore (Eller-ITO), rather than a vessel owner. And this is the standard arrangement contemplated by the LHWCA. Thus, we decline to apply the dual-capacity employment cases to uphold the District Court's conclusion that Seaboard can be subject to separate, independent liability under § 905(b) and § 933.

16

## IV. CONCLUSION

We reverse the District Court's ruling that its resolution of this case does not foreclose causes of action that the Claimants may bring against Seaboard in its role as an onloading stevedore.  In light of this ruling, the Claimants' cross-appeal on the District Court's finding that Mr. Hyman was the proximate cause of the accident is moot, so we do not decide it.[5]

**REVERSED.**

---

[5] The Claimants do not challenge the remaining bases for the final judgment in favor of Seaboard, and this ruling does not disturb that judgment.

17

HULL, Circuit Judge, concurring.

I concur in full with my colleague's excellent opinion. I speak separately only to one issue. After a bench trial, the district court entered a final judgment in favor of Petitioner Seaboard on both Seaboard's petition for exoneration from liability and on the Claimants' counter-claims for money damages against Seaboard. I agree with the panel opinion that, while the district court properly entered final judgment in favor of Seaboard in this case, the district court erred in ruling that the resolution of this action does not foreclose causes of action that the Claimants may bring against Seaboard as an onloading stevedore. Because this action does foreclose such claims against Seaboard as an onloading stevedore and as a vessel owner, I join the panel opinion's reversal of that particular ruling by the district court.

What I address more fully is the cross-appeal by the Claimants. Specifically, in addition to Seaboard's Notice of Appeal, the Claimants filed their own separate Notice of Appeal on July 15, 2015, which cross-appealed the district court's ruling on proximate cause. The district court found that the proximate cause of the tragic accident here was not the conduct of Seaboard but Mr. Hyman's decision to position himself in the pinch point when giving Mr. Palmer, the mule driver, the order to move forward. The district court did not err in reaching and deciding that proximate cause issue because it was litigated before the district court. Although

18

nothing here disturbs that ruling, I write to explain further why the Claimants (as Cross-Appellants) have shown no legal error as to the district court's reaching and ruling on the proximate cause issue.

## I.  PROCEDURAL BACKGROUND

In this case, the Claimants not only filed an Answer and Affirmative Defenses to Seaboard's Petition but also filed a separate pleading entitled "Claim of Antwon Hyman and Sieshia Neshay Reid, as Personal Representatives of the Estate of Ossie Hyman," seeking damages for the wrongful death of Mr. Hyman. That separate Claim alleged that Mr. Hyman "carefully, properly, and prudently," performed his duties and that Seaboard was negligent and breached its multiple duties under LHWCA §§ 905, 933, and the general maritime law of the United States. Before the district court, the parties expressly agreed to litigate the proximate cause of the accident, and the Claimants fully litigated the issue before the district court. Indeed, in a January 28, 2015 joint pre-trial stipulation, both parties agreed to submit the following issue as an "Issue[] of Fact Which Remain[s] to be Litigated at Trial . . . [:] What was the legal cause or causes of the accident." Under principles of negligence law, determination of the legal cause of the accident requires a determination of whether the defendant "actually and proximately caused the plaintiff's injury." Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012) (emphasis added).

19

The district court held a three-day bench trial and reviewed extensive evidence, submitted by both parties, concerning the proximate cause of the accident. This evidence included video of Mr. Hyman's conduct on the ramp on the day of the accident, as well as witness testimony concerning the factors that caused the lateral shift of the trailer. After the trial, the district court made an express factual finding that "the proximate cause of Mr. Hyman's death was . . . Mr. Hyman's decision to position himself in the pinch point when giving [the mule driver] the order to move forward—a decision which even his fellow longshoremen found inexplicable." Thus, the Claimants intended to litigate the issue of the proximate cause of the accident, the district court gave the Claimants a full and fair opportunity to do so, and the issue was actually litigated.

## II.  ARGUMENTS IN CROSS-APPEAL

In their own cross-appeal, the Claimants argue that the district court erred by considering Mr. Hyman's own conduct when determining the proximate cause of the accident. According to the Claimants, the district court's proximate cause inquiry should focus solely on the conduct of Seaboard, and the conduct of Mr. Hyman is "not material" to the analysis. Indeed, Claimants argue that the district court erred by even reaching the proximate cause issue. Claimants argue that "it was beyond the district court's jurisdiction in a limitation proceeding to apportion fault on parties other than the vessel owner." The Claimants cite the decision in

20

Birmingham Southeast, L.L.C. v. M/V Merchant Patriot, 124 F. Supp. 2d 1327, 1339 (S.D. Ga. 2000) (emphasis added) ("A shipowner is entitled to exoneration from all liability for a maritime [casualty] only when it demonstrates that it is free from any contributory fault." (quoting American Dredging Co. v. Lambert, 81 F.3d 127, 129 (11th Cir. 1996))).

In their reply brief to the cross-appeal, Seaboard argues among other things that Claimants' own pleadings and the joint pre-trial stipulation raised the issue, and Claimants received what they asked for, which was full adjudication of all of their rights on the merits.

In this regard, I note that in similar limitation proceedings, courts have routinely looked to the conduct of the longshoreman, as well as third parties, to assist in determining whether the vessel owner's conduct was a proximate cause of the accident. Indeed, courts have held that a longshoreman's own negligence can be the sole proximate cause of his accident, precluding any finding that the vessel owner's conduct was a proximate cause. See In re Kirby Inland Marine, L.P., 241 F. Supp. 2d 721, 724-26 (S.D. Tex. 2003) (deciding, in a LHWCA § 905(b) limitation action, that the longshoreman claimant was the proximate cause of the accident and that the vessel interests were therefore free of fault); Trueba v. Flota Bananera Ecuadorian Lines, Inc., 675 F. Supp. 786, 789-90 (S.D.N.Y. 1987) (finding, in a limitation action, that the plaintiff longshoreman's "own negligent

21

failure" to keep a ship passageway clear of obstruction prevented a finding that the vessel owner was the proximate cause of the accident). See also Sinagra v. Atl. Ocean Shipping, Ltd., 182 F. Supp. 2d 294, 300-305 (E.D.N.Y. 2001); Sec. Barge Line, Inc. v. Lewis, 644 F. Supp. 85, 90-92 (E.D. Mo. 1986).

In short, the district court conducted a thorough trial and factual investigation to determine the proximate cause of Mr. Hyman's fatal accident and did not err in reaching and ruling on the proximate cause issue. [1] The panel opinion already covers Claimants' negligence claims against Seaboard as both a vessel owner and an onloading stevedore. My discussion above is to set forth just an additional reason why I join the panel opinion's statement that "[i]t is hard to imagine what kind of negligence case the Claimants could bring if Mr. Hyman was the proximate cause of the accident."

---

[1] In their cross-appeal, Claimants do not challenge the sufficiency of the evidence to support the district court's proximate cause finding, but do contend the district court should not have considered Mr. Hyman's conduct.

22